UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MICHAEL BUSH,                              )
    *Plaintiff*,                         )
                                          )
vs.                                        )    C.A. NO. 1:21-cv-12039-IT
                                          )
ACTON-BOXBOROUGH REGIONAL                   )
SCHOOL DISTRICT and PETER LIGHT,            )
Superintendent of the Acton-Boxborough      )
Regional School District,                   )
    *Defendants*.                        )

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)**

John J. Davis, BBO #115890
PIERCE DAVIS & PERRITANO LLP
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

1

## TABLE OF CONTENTS

I.   ALLEGED FACTS ................................................................................................ 2

II.  STANDARD OF REVIEW ................................................................................. 4

III. ARGUMENT ...................................................................................................... 5

    A.   COUNTS I & II OF PLAINTIFF'S COMPLAINT FAIL TO STATE CLAIMS FOR
        RELIEF UNDER TITLE II OF THE ADA. ................................................. 5

      1.   Plaintiff Fails to Allege a "Disability" Within the Meaning of the ADA. ...................... 5

      2.   Plaintiff Fails to Allege he was Denied a Reasonable Accommodation to his
          Disability ........................................................................................................ 8

      3.   Plaintiff Fails to Allege he is a "Qualified Individual with a Disability" Within   the
          Meaning of the ADA. .................................................................................. 11

    B.   COUNT III OF PLAINTIFF'S COMPLAINT FAILS TO STATE CLAIMS FOR RELIEF
        UNDER 42 U.S.C. §§ 1983 & 1985. ................................................... 12

      1.   Plaintiff Fails to Allege a Claim for Equal Protection Under the Fourteenth
          Amendment. .................................................................................................. 12

      2.   Plaintiff Fails to Allege a Claim for Violation of Freedom of Association   Rights
          Under the First Amendment ......................................................................... 14

      3.   Plaintiff Fails to Allege Claims for Civil Rights Conspiracy ......................... 16

    C.   PLAINTIFF'S COMPLAINT FAILS TO STATE CLAIMS AGAINST DEFENDANT,
        SUPERINTENDENT LIGHT. ...................................................................... 18

      1.   Superintendent Light Cannot be Sued Under the ADA (Counts I & II). ...................... 18

      2.   Superintendent Light is Entitled to Qualified Immunity Under 42 U.S.C. §1983
          (Count III). .................................................................................................... 19

IV. CONCLUSION .................................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*A. C. v. Raimondo*,
  494 F. Supp. 3d 170 (D. R.I. 2020) ........................................................... 13

*Alexis v. McDonald's Restaurants of Mass., Inc.*,
  67 F.3d 341 (1st Cir. 1995) ...................................................................... 18

*Alston v. Spiegel*,
  988 F.3d 564 (1st Cir. 2021) ................................................................ 4, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 4, 5

*Audette v. Town of Plymouth, MA*,
  858 F.3d 13 (1st Cir. 2017) ......................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 4, 5

*Bragdon v. Abbott*,
  524 U.S. 624 (1998) ..................................................................................... 6

*Bryant v. Caritas Norwood Hosp.*,
  345 F. Supp. 2d 155 (D. Mass. 2004) .......................................................... 7

*Buchanan v. Maine*,
  469 F.3d 158 (1st Cir. 2006) ....................................................................... 5

*Carreras v. Sajo, Garcia & Partners*,
  596 F.3d 25 (1st Cir. 2010) ..................................................................... 5, 7

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) .................................................................... 13

*Charles v. Johnson*,
  18 F.4th 686 (11th Cir. 2021) ..................................................................... 6

*Cousins v. Wigoda*,
  419 U.S. 477 (1975) ................................................................................. 15

*De Jonge v. State of Oregon*,
  299 U.S. 353 (1937) ................................................................................. 14

*Delaney v. Baker*,
  511 F. Supp. 3d 55 (D. Mass. 2021) ......................................................... 14

*Diaz v. Devlin*,
  229 F. Supp. 3d 101 (D. Mass. 2017) ....................................................... 16

*Doe v. Univ. of Md. Med. Syst. Corp.*,
  50 F.3d 1261 (4th Cir. 1995) .................................................................... 11

*Earle v. Benoit*,
  850 F.2d 836 (1st Cir. 1988) .................................................................... 16

*Edwin v. Blenwood Assocs., Inc.*,
  9 F. Supp. 2d 70 (D. Mass. 1998) ............................................................... 3

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..................................................................................... 5

*Estate of Bennett v. Wainwright*,
  548 F.3d 155 (1st Cir. 2008) .................................................................... 16

## TABLE OF AUTHORITIES (Cont.)

*Eustace v. Springfield Public Schools*,
  463 F. Supp. 3d 87 (D. Mass. 2020) ...................................................... 6
*FCC v. Beach Communications, Inc.*,
  508 U.S. 307 (1993) ............................................................................ 13
*Febus-Rodriguez v. Betancourt-Lebron*,
  14 F.3d 87 (1st Cir. 1994) .................................................................. 19
*Frazier v. Bailey*,
  957 F.2d 920 (1st Cir. 1992) ............................................................. 19
*Gattineri v. Town of Lynnfield*,
  2021 WL 3634148 (D. Mass. Aug. 17, 2021) ................................... 18
*Gent v. CUNA Mut. Ins. Society*,
  611 F.3d 79 (1st Cir. 2010) .................................................................. 9
*Grace United Methodist Church v. City of Cheyenne*,
  451 F.3d 643 (10th Cir. 2006) ........................................................... 14
*Griffin v. Breckenridge*,
  403 U.S. 88 (1971) ............................................................................. 17
*Gunter v. North Wasco County Sch. Dist. Bd. of Ed.*,
  2021 WL 6063672 (D. Ore. Dec. 22, 2021) ..................................... 14
*Hamann v. Carpenter*,
  937 F.3d 86 (1st Cir. 2019) .................................................................. 4
*Harding v. Cianbro Corp.*,
  436 F. Supp. 2d 153 (D. Me. 2006) ..................................................... 7
*Heller v. Doe by Doe*,
  509 U.S. 312 (1993) ........................................................................... 13
*Horne v. City of Boston*,
  509 F. Supp. 2d 97 (D. Mass. 2007) .................................................. 18
*Jacobson v. Commonwealth of Mass.*,
  197 U.S. 11 (1904) ....................................................................... 14, 16
*Kentucky v. Graham*,
  473 U.S. 159 (1985) ........................................................................... 16
*Kusper v. Pontikes*,
  414 U.S. 51 (1973) ............................................................................. 15
*Landrigan v. City of Warwick*,
  628 F.2d 736 (1st Cir. 1980) ........................................................ 16, 17
*Lloyd v. School Bd. of Palm Beach County*,
  2021 WL 5353879 (S.D. Fla. Oct. 29, 2021) .................................... 13
*Lowinger v. Broderick*,
  50 F.3d 61 (1st Cir. 1995) .................................................................. 19
*Mancini v. City of Providence*,
  909 F.3d 32 (1st Cir. 2018) .............................................................. 6, 7
*Miller v. King*,
  384 F.3d 1248 (11th Cir. 2004) ......................................................... 18
*Mullenix v. Luna*,
  136 S.Ct. 305 (2015) .................................................................... 19, 20

## TABLE OF AUTHORITIES (Cont.)

*NAACP v. Alabama ex rel Patterson*,
   357 U.S. 449 (1958)...................................................................................................... 14, 15
*NAACP v. Button*,
   371 U.S. 415 (1963)........................................................................................................ 15
*Nieves v. McSweeney*,
   241 F.3d 46 (1st Cir. 2001)............................................................................................ 17
*Onishea v. Hopper*,
   171 F.3d 1289 (11th Cir. 1999) ..................................................................................... 11
*Papasan v. Allain*,
   478 U.S. 265 (1986)......................................................................................................... 4
*Parker v. Landry*,
   935 F.3d 9 (1st Cir. 2019).............................................................................................. 17
*Parker v. Universidad de Puerto Rico*,
   225 F.3d 1 (1st Cir. 2000)........................................................................................... 5, 11
*Parks v. Port of Oakland*,
   2017 WL 2840704 (N.D. Cal. July 3, 2017).................................................................. 8
*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2008).......................................................................................... 17
*Pletcher v. Giant Eagle, Inc.*,
   2020 WL 6263916 (W.D. Pa. Oct. 23, 2020) ................................................................ 11
*Powell v. Alexander*,
   391 F.3d 1 (1st Cir. 2004)................................................................................................ 1
*Pride v. Does*,
   997 F.2d 712 (10th Cir. 1993) ......................................................................................... 1
*Ramos v. Toperbee Corp.*,
   241 F. Supp. 3d 305 (D. P.R. 2017)................................................................................ 7
*Ramos-Echevarria v. Pichis, Inc.*,
   659 F.3d 182 (1st Cir. 2011)............................................................................................ 5
*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984)....................................................................................................... 15
*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   141 S.Ct. 63 (2020)................................................................................................... 14, 16
*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012).............................................................................................. 4
*Slotnick v. Staviskey*,
   560 F.2d 31 (1st Cir. 1977)............................................................................................ 16
*Smith v. City of Holyoke*,
   2020 WL 1514610 (D. Mass. March 30, 2020)............................................................ 16
*South Bay United Pentecostal Church v. Newsom*,
   140 S.Ct. 1613 (2020)................................................................................................... 14
*Stepien v. Murphy*,
   2021 WL 5822987 (D. N.J. Dec. 7, 2021).................................................................... 14
*Together Employees v. Mass. Gen'l Brigham, Inc.*,
   2021 WL 5234394 (D. Mass. Nov. 10, 2021) ............................................................... 11

## TABLE OF AUTHORITIES (Cont.)

*United States v. Cruikshank,*
  92 U.S. 542 (1876) .............................................................................. 14
*W.S. by Sonderman v. Ragsdale,*
  2021 WL 2024687 (N.D. Ga. May 12, 2021) ....................................... 13
*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ............................................................................ 13
*Watterson v. Page,*
  987 F.2d 1 (1st Cir. 1993) ..................................................................... 3
*Wentworth Precious Metals, LLC v. City of Everett,*
  2013 WL 441094 (D. Mass. Feb. 4, 2013) ........................................... 17
*Wiesman v. Hill,*
  629 F. Supp. 2d 106 (D. Mass. 2009) ................................................. 18

**Constitutional Provisions**
U.S. Const. amend. I ............................................................ 1, 14, 15, 16, 19
U.S. Const. amend. XIV .................................................................. 1, 12, 19

**Statutes**
42 U.S.C. § 1983 ................................................... 1, 2, 12, 16, 17, 19
42 U.S.C. § 1985 ............................................................... 1, 17, 18
42 U.S.C. § 12102(1)(A) ............................................................... 5, 7
42 U.S.C. § 12131 .................................................................. 11, 18
42 U.S.C. § 12132 ............................................................. 1, 11, 18

**Judicial Rules**
Fed. R. Civ. P. 12(b)(6) ........................................................... 2, 4, 20

**Regulations**
28 C.F.R. § 35.104 ..................................................................... 12
28 C.F.R. § 35.108 ................................................................ 5, 6, 7
28 C.F.R. § 35.130 ..................................................................... 8, 9
28 C.F.R. § 35.139 ..................................................................... 12
29 C.F.R. § 1630.2 ....................................................................... 8

**Other Authorities**
Cato Institute,
  https://www.cato.org/about (last visited Feb. 14, 2022) .......................... 9
Center for Disease Control and Prevention,
  Improve How Your Mask Protects You,
  https://www.cdc.gov/coronavirus/2019-ncov/your-health/effective-masks.html
  (last visited Feb. 14, 2022) ..................................................................... 9
Department of Justice,
  The Department of Justice Warns of Inaccurate Flyers and Postings Regarding the Use of Face
  Masks and the Americans with Disabilities Act,
  https://www.justice.gov/opa/pr/department-justice-warns-inaccurate-flyers-and-postings-
  regarding-use-face-masks-and (last visited Feb. 14, 2022) ..................... 10

# TABLE OF AUTHORITIES (Cont.)

EEOC,
  Pandemic Preparedness in the Workplace and the Americans with Disabilities Act,
  https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-
  disabilities-act (last visited Feb. 14, 2022) ............................................................................ 12
EEOC,
  What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other
  EEO Laws, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-
  rehabilitation-act-and-other-eeo-laws (last visited Feb. 14, 2022) ......................................... 10
Journal of the American Medical Association,
  Effectiveness of Mask Wearing to Control Community Spread of SARS-CoV-2,
  https://jamanetwork.com/journals/jama/fullarticle/2776536 (last visited Feb. 14, 2022) ........ 10
Mayo Clinic,
  How well do face masks protect against COVID-19?
  https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-mask/art-
  20485449 (last visited Feb. 14, 2022) .................................................................................... 10
N. Day & J. Cowan,
  "Governing Through the 'New Normal': COVID-19 Lessons Learned on Local Government
  Law, the Constitution and Balancing Rights in Times of Crises,"
  50 Stetson L. Rev. 547 (Summer 2021) ................................................................................. 11
Proceedings of the National Academy of Sciences,
  An evidence review of face masks against COVID-19,
  https://www.pnas.org/content/118/4/e2014564118 (last visited Feb. 14, 2022) ...................... 10
World Health Organization,
  Coronavirus disease (COVID-19) advice for the public: When and how to use masks,
  https://www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public/when-
  and-how-to-use-masks (last visited Feb. 14, 2022) .................................................................. 9

This action against the Acton-Boxborough Regional School District ("ABRSD") and Superintendent Peter Light arises out of a face mask mandate adopted by the Acton-Boxborough Regional School Committee ("School Committee") for the 2021-2022 school year in response to the COVID-19 Pandemic. Based on recommendations of the Centers for Disease Control and Prevention ("CDC") and the American Academy of Pediatrics, the mandate required all students, ABRSD staff and visitors to wear a face mask when inside ABRSD facilities regardless of vaccination status. (Complaint, Exhibit 1, Doc. No. 1 at 2-3). Claiming the mask mandate violated Title II of the Americans with Disabilities Act ("ADA") and his constitutional rights as guaranteed under the First and Fourteenth Amendments, the plaintiff, Michael Bush (a visitor), brings this action against the ABRSD and Superintendent Light[1] for declaratory relief, injunctive relief and compensatory damages.

Plaintiff's Complaint sounds in three Counts. In Counts I and II, plaintiff alleges defendants discriminated against him because of a disability in violation of Title II of the ADA, 42 U.S.C. § 12132. In Count III, plaintiff seeks recovery under 42 U.S.C. § 1983 for the alleged violation of his equal protection rights under the Fourteenth Amendment and freedom of association rights under the First Amendment. In Count III, plaintiff also seeks recovery under 42 U.S.C. §§ 1983 & 1985 for defendants' alleged conspiracy to deprive him of his civil rights.

---

[1] Plaintiff fails to state whether Superintendent Light is sued in his individual capacity, his official capacity or both. Absent a specific allegation, the First Circuit employs the "course of proceedings" test to determine capacity, under which a Court examines "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability." *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004) (quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)). Still, the "far better practice [is] for the allegations in the complaint to be specific. A plaintiff who leaves the issue murky in the complaint runs considerable risks under the [course of proceedings] doctrine ...." *Id.*, at 22. In defendants' view, applying the course of proceedings test, Superintendent Light is sued in his official capacity only.

Plaintiff's Complaint fails to state claims upon which relief can be granted and, therefore, must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. At the outset, plaintiff fails to sufficiently allege he is "disabled" within the meaning of the ADA, that he was denied a reasonable accommodation to his disability, and/or that he is a "qualified individual with a disability." Therefore, plaintiff cannot recover under Title II of the ADA. Further, plaintiff fails to allege sufficient facts to show that defendants treated him differently from similarly situated persons and/or that such disparate treatment burdened a fundamental right, targeted a suspect class, or had no rational basis. Nor does plaintiff allege sufficient facts to show that the mask mandate somehow violated his freedom of association rights. Thus, plaintiff cannot recover under 42 U.S.C. § 1983. Finally, plaintiff fails to allege sufficient facts to show that defendants engaged in an unlawful civil rights conspiracy. This Memorandum of Law is submitted in support of defendants' Motion to Dismiss.

## I. ALLEGED FACTS

In August 2020, the School Committee (like nearly all school districts throughout the Commonwealth) adopted policies to address the issue of public safety within its schools in the wake of the COVID-19 Pandemic. The disease is highly contagious and can lead to severe illness and death.[2] In August 2021, the School Committee revised and readopted its COVID-19 policies for the upcoming 2021-2022 school year. School Committee Policy "EBCFA – Masks/Face Coverings" states, in part, as follows:

> According to public health experts and guidance from the Centers for Disease Control and
> Prevention (CDC) and the Massachusetts Department of Public Health (MDPH), face

---

[2] Plaintiff refers to the COVID-19 Pandemic as the "Alleged Epidemic." (Complaint, Introduction, at 2). Plaintiff also criticizes governmental responses to the Pandemic which, "in early 2020, was of uncertain potential mortality rate – which by 2021 was known to be under 1%." (*Id.*, ¶ 5). As of February 11, 2022, the CDC had recorded 915,425 deaths in the United States attributable to COVID-19. By the same date, Massachusetts deaths totaled 22,791.

2

> coverings/mask-wearing is an important component in the prevention and control of COVID-19 in concert with physical distancing and other measures and offers one of the best ways to mitigate their spread for the safety of our school community.
> ….
> The Acton-Boxborough Regional School District (ABRSD) may at times mandate the use of face coverings/masks that cover the nose and mouth (as defined in EBCFA-R) by all individuals (including visitors) in school buildings, on school grounds and on school transportation, even when physical distancing is observed. Such mandates will be developed and enacted by the District Administration and may be amended periodically in response to public health conditions with regard to the spread of COVID-19.[3]

School Committee Policy "EBCFA-R – Requirement to Wear Masks/Face Coverings" states, in

part, as follows:

> Given the recent increase in the spread of COVID-19 throughout the state and region, and based upon the recommendations of Centers for Disease Control and Prevention (CDC) and the American Academy of Pediatrics, **the District will begin the 2021-2022 school year by requiring all students and staff PK-12, regardless of vaccination status, *to wear a mask when indoors*.**
> …..
> **Visitors**
> - All visitors, where permitted, to schools for meetings and events are required to wear a mask when indoors.

(Complaint, Exhibit 1, Doc. No. 1-3 at 2-3) (emphasis in original).

In the fall of 2021, plaintiff registered for the ABRSD Community Education adult

volleyball league. (*Id.*, ¶ 12, Doc. No. 1 at 6). Because league games are played in ABRSD

facilities, participants were required to wear face masks in accordance with School Committee

policies. (*Id.*, ¶ 6, Doc. No. 1 at 5). Mr. Bush objected to the mask requirement, claiming masks

---

[3] A true and accurate copy of School Committee Policy EBCFA is attached to defendants' Motion to Dismiss as Exhibit "A." Doc. No. 13-1 at 2-3. Under certain circumstances, "[a] court may consider [such documents] in making its decision on this [Rule 12] motion without converting the matter into a summary judgment proceeding." *Edwin v. Blenwood Assocs., Inc.*, 9 F. Supp. 2d 70, 72 (D. Mass. 1998). Such circumstances include "documents the authenticity of which are not disputed by the parties; … official public records; … documents central to plaintiffs' claim; [and] … documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Here, where plaintiff attached only one School Committee policy regarding face masks to his Complaint (Exhibit 1), Doc. No. 1-3 at 2, it is appropriate for the Court to consider its companion policy as well.

are "medically contraindicated" and "medically inappropriate" for him due to a "private medical condition." He provided a doctor's note to this effect to ABRSD. (*Id.*, Introduction, at 3 & ¶ 16; Exhibit 7, Doc. No. 1 at 3 & 7, Doc. No 1-9 at 2). He further claimed the mask requirement "physically barred [him] from participation 'in all aspects of society'…," but did not further elaborate. (*Id.*, Introduction, at 3, Doc. No. 1 at 3). Plaintiff demanded an accommodation from ABRSD in the form of a medical exemption from the mask mandate. (*Id.*, ¶¶ 17 & 20, Doc. No. 1 at 7-8). The defendant declined, suggesting Mr. Bush wear a face shield instead of a face mask. Mr. Bush refused. (*Id.*, ¶ 23, Doc. No 1 at 8). On September 21, 2021, Superintendent Light allegedly barred Mr. Bush from entry and participation in the adult volleyball league. (*Id.*, ¶ 24, Doc. No. 1 at 8). This litigation ensued.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). See *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (court should ignore statements "that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). In other words, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Twombly*, 550 U.S. at 555). A mere "possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See *Hamann v. Carpenter*, 937 F.3d 86, 90 (1st Cir. 2019) (conclusory allegations of ill will and spite held insufficient to cross plausibility threshold).

In 2007, the Supreme Court restated the well-known standard that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Two years later, the Supreme Court clarified *Twombly* by stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679.

### III. ARGUMENT

**A.    COUNTS I & II OF PLAINTIFF'S COMPLAINT FAIL TO STATE CLAIMS FOR RELIEF UNDER TITLE II OF THE ADA.[4]**

#### 1.    Plaintiff Fails to Allege a "Disability" Within the Meaning of the ADA.

To state an ADA claim, a plaintiff must allege that (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in, or denied the benefits of, a public entity's "services, programs or activities," or was otherwise discriminated against; and (3) such exclusion, denial of benefits or discrimination was by reason of his disability. *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000); *Buchanan v. Maine*, 469 F.3d 158, 170-71 (1st Cir. 2006). A disability is "a physical or mental impairment that substantially limits one or more major life activities ...." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108. A plaintiff has the burden of establishing a disability in order to state a prima facie of discrimination. *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010). See *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011) ("[T]the plaintiff must establish that he suffers from a physical

---

4 Count I alleges *de jure* disability discrimination. Count II alleges *de facto* disability discrimination. Defendants have found no case law addressing the purported difference between *de jure* and *de facto* disability discrimination and, therefore, will address both Counts together.

or mental impairment."); *Eustace v. Springfield Public Schools*, 463 F. Supp. 3d 87, 100-101 (D. Mass. 2020) ("A plaintiff must present sufficient evidence indicating she is disabled within the meaning of the ADA's definition.") (citing *Audette v. Town of Plymouth, MA*, 858 F.3d 13, 20 (1st Cir. 2017)). Plaintiff alleges no "physical or mental impairment" in his Complaint; rather, he alleges only that a face mask is "medically contraindicated" for him. A "physical or mental impairment" means "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems ...," such as the respiratory or immune systems. 28 C.F.R. § 35.108(b)(1)(i). Mr. Bush's alleged "disorder or condition" – and, hence, his alleged "impairment" – remains undisclosed.

Without disclosing his disorder or condition, plaintiff nonetheless alleges that playing volleyball is a "major life activity" for him. (Complaint, Introduction, at 3, Doc. No. 1 at 3). "The identification of a major life activity is a necessary step in proving a disability." *Charles v. Johnson*, 18 F.4th 686, 703 (11th Cir. 2021) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). See *Mancini v. City of Providence*, 909 F.3d 32, 42 (1st Cir. 2018). A "major life activity" is defined to include, but not limited to:

> Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working ….

28 C.F.R. § 35.108(c)(1)(i). It also includes the operation of major bodily functions. 28 C.F.R. § 35.108(c)(1)(i). The "touchstone" for determining whether an activity is a "major life activity" is its "significance." *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998).

The ADA Amendments Act ("ADAAA"), enacted in late 2008, admittedly cautions that the term "major" should not be interpreted strictly to create a "demanding standard." 28 C.F.R. § 35.108(c)(2)(i). Federal regulations adopted to enforce the ADAAA expressly state: "Whether an

activity is a major life activity is not determined by reference to whether it is of central importance to daily life." 28 C.F.R. § 35.108(c)(2)(ii). Still, a "major" life activity must be more than a mere pastime or hobby. Pastimes and hobbies are of far lesser importance (and of a lower degree) than the types of activities enumerated in the definition above and, thus, should not be used to define one's disability status. See *Harding v. Cianbro Corp.*, 436 F. Supp. 2d 153, 173 (D. Me. 2006) (climbing held not a "major life activity"); *Bryant v. Caritas Norwood Hosp.*, 345 F. Supp. 2d 155, 165 (D. Mass. 2004) (nighttime driving held not a "major life activity"); *Ramos v. Toperbee Corp.*, 241 F. Supp. 3d 305, 328 (D. P.R. 2017) (same). While the term "major" does not impose a "demanding standard," it must still be interpreted to impose at least *some* standard. Under any standard, playing adult volleyball should not be considered a "major life activity."

Finally, to establish his disability, plaintiff must show that his impairment imposes a "substantial" limitation on his major life activity. 42 U.S.C. § 12102(1)(A).

> An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

28 C.F.R. § 35.108(d)(1)(v); *Carreras*, 596 F.3d at 33. Again, following the ADAAA, this restriction does not demand "extensive analysis" and should be "construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(d)(1)(i) & (ii). According to the First Circuit, the determination as to whether an impairment "substantially limits" a major life activity "calls for a comparison between the plaintiff's limitations and those of the majority of people in the general population." *Mancini*, 909 F.3d at 42.[5] To make this comparison, a court should take into account

---

[5] Under parallel EEOC regulations, "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as

"the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Parks v. Port of Oakland*, 2017 WL 2840704, at *4 (N.D. Cal. July 3, 2017). Even under the more flexible ADAAA standard, the mask mandate does not "substantially limit" plaintiff's ability to play adult volleyball, any more than it limits the ability of other league players (*i.e.*, the general population) who likewise play and compete while wearing masks. The impairment is temporary, and its long term impact is negligible. Thus, plaintiff fails to allege sufficient facts to establish a "disability."

> **2.     Plaintiff Fails to Allege he was Denied a Reasonable Accommodation to his Disability.**

A public entity must make "reasonable accommodations" (or modifications to its programs) so that a disabled person can participate in the entity's "services, programs or activities." Federal regulations state:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7)(i). However, mask-less participation in the Community Education adult volleyball league is not a "reasonable accommodation." Allowing mask-less players to compete would "fundamentally alter" the nature of the program as it would effectively discourage other masked players from joining and participating in the league. More importantly, a public entity is entitled to impose "legitimate safety requirements" for the safe operation of its programs.

> A public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities. However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii) .

28 C.F.R. § 35.130(h). The School Committee's mask mandate was a "legitimate safety requirement" necessary for the safe operation of the adult volleyball program. In addition, the mandate was based on actual, documented risks regarding the spread of a deadly disease.

In his Complaint, plaintiff flatly rejects the science regarding the spread of COVID-19. Dismissing the Pandemic as the "Alleged Epidemic," he denies that mask mandates serve a "compelling public need" and rejects the conclusion that "masks play an important role in mitigating the spread of the virus" as "unfounded." (Complaint, Introduction, at 2-3, Doc. No. 1 at 2-3). Doubling down, plaintiff brazenly asserts that "the body of evidence … refut[es] the efficacy of face masks for preventing the spread of [COVID-19]." (*Id.*, ¶ 7, Doc. No. 1 at 5). In support of this assertion, plaintiff cites a "working paper" from a public policy research organization in Washington, D.C., known as the Cato Institute, whose stated vision is "to create free, open, and civil societies founded on libertarian principles."[6]

The "body of evidence," of course, is overwhelmingly to the contrary. For example:

**World Health Organization ("WHO")**: "Masks should be used as part of a comprehensive strategy of measures to suppress transmission and save lives …."[7]

**CDC**: "Correct and consistent mask use is a critical step everyone can take to prevent getting and spreading COVID-19."[8]

**Journal of the American Medical Association**: "Compelling data now demonstrate that community mask wearing is an effective nonpharmacologic intervention to reduce the

---

[6] https://www.cato.org/about (last visited Feb. 14, 2022). A court may take judicial notice of relevant facts provided on a website which are "not subject to reasonable dispute." *Gent v. CUNA Mut. Ins. Society*, 611 F.3d 79, 84 n. 5 (1st Cir. 2010) (quoting Fed. R. Evid. 201(b), (f)).
[7] https://www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public/when-and-how-to-use-masks (last visited Feb. 14, 2022).
[8] https://www.cdc.gov/coronavirus/2019-ncov/your-health/effective-masks.html (last visited Feb. 14, 2022).

spread of this infection, especially as source control to prevent spread from infected persons, but also as protection to reduce wearers' exposure to infection."[9]

**Mayo Clinic:** "Face masks combined with other preventive measures, such as getting vaccinated, frequent hand-washing and physical distancing, can help slow the spread of the virus that causes COVID-19."[10]

**Proceedings of the National Academy of Sciences**: "The preponderance of evidence indicates that mask wearing reduces transmissibility per contact by reducing transmission of infected respiratory particles in both laboratory and clinical contexts. Public mask wearing is most effective at reducing spread of the virus when compliance is high."[11]

The School Committee was entitled to rely upon such scientific evidence in adopting a requirement that students, staff and visitors must wear face masks in all ABRSD facilities. As the United States Department of Justice declared in a Public Notice regarding face masks issued on June 30, 2020: "The ADA does not provide a blanket exemption to people with disabilities from complying with legitimate safety requirements necessary for safe operations."[12]

Even if defendants were required to make a "reasonable accommodation" to plaintiff's disability (which they deny), they did so by inviting plaintiff to participate in the volleyball league while wearing a face shield instead of a face mask. (Complaint, ¶ 23, Doc. No. 1 at 8). See *Pletcher*

---

[9] https://jamanetwork.com/journals/jama/fullarticle/2776536 (last visited Feb. 14, 2022).
[10] https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-mask/art-20485449 (last visited Feb. 14, 2022).
[11] https://www.pnas.org/content/118/4/e2014564118 (last visited Feb. 14, 2022).
[12] https://www.justice.gov/opa/pr/department-justice-warns-inaccurate-flyers-and-postings-regarding-use-face-masks-and (last visited Feb. 14, 2022). In a revised publication addressing COVID-19 in the workplace, the EEOC confirmed the ADA "do[es] not interfere with or prevent employers from following the guidelines and suggestions made by the CDC or state/local public health authorities about steps employers should take regarding COVID-19." https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited Feb. 14, 2022).

*v. Giant Eagle, Inc.*, 2020 WL 6263916, at \*4 (W.D. Pa. Oct. 23, 2020) (wearing face shield in place of face mask held a reasonable accommodation); N. Day & J. Cowan, "Governing Through the 'New Normal': COVID-19 Lessons Learned on Local Government Law, the Constitution and Balancing Rights in Times of Crises," 50 STETSON L. REV. 547, 564 (Summer 2021) (reasonable accommodations to persons claiming they cannot wear face masks due to disabilities include allowing individuals "to wear a scarf, loose face covering, or a full-face shield instead of a face mask.") For reasons unknown, plaintiff declined defendants' invitation.

### 3. Plaintiff Fails to Allege he is a "Qualified Individual with a Disability" Within the Meaning of the ADA.

Even if plaintiff is "disabled," to recover under Title II of the ADA, he must show he is a "qualified individual with a disability." 42 U.S.C. § 12132; *Parker*, 225 F.3d at 4. The term "qualified individual with a disability" is defined as:

> [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A disabled individual is not otherwise "qualified" if he poses "a significant risk to the health or safety of others by virtue of the disability that cannot be eliminated by reasonable accommodations." *Doe v. Univ. of Md. Med. Syst. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). See *Together Employees v. Mass. Gen'l Brigham, Inc.*, 2021 WL 5234394, at \*7 (D. Mass. Nov. 10, 2021) (plaintiffs who pose "direct threat" to health or safety of others in workplace by refusing COVID-19 vaccinations held not "qualified individuals"); *Onishea v. Hopper*, 171 F.3d 1289, 1296-97 (11th Cir. 1999) (individual not "qualified" if he poses direct threat to health or safety of others). Federal regulations incorporate this exception. A public entity is not required "to permit an individual to participate in or benefit from the services, programs, or activities of that

11

public entity when that individual poses a direct threat to the health or safety of others." 28 C.F.R. § 35.139(a). A "direct threat" means "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices or procedures, or by the provision of auxiliary aids or services as provided in § 35.139." 28 C.F.R. § 35.104. To determine whether an individual poses a direct threat to the health or safety of others:

> [A] public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 35.139(b).

Plaintiff's participation in the adult volleyball league without a face mask poses "a direct threat to the health or safety of others" within the meaning of 28 C.F.R. § 35.139(a). Moreover, this assessment by the School Committee was based on current medical knowledge and the best available objective evidence regarding the spread of COVID-19. See EEOC Technical Assistance Document (updated March 20, 2020) ("Based on guidance of the CDC and public health authorities as of March 2020, the COVID-19 pandemic meets the direct threat standard.")[13] Therefore, plaintiff fails to meet the definition of a "qualified individual with a disability." For the reasons stated above, this Court should dismiss Counts I and II of plaintiff's Complaint.

**B.    COUNT III OF PLAINTIFF'S COMPLAINT FAILS TO STATE CLAIMS FOR RELIEF UNDER 42 U.S.C. §§ 1983 & 1985.**

**1.    Plaintiff Fails to Allege a Claim for Equal Protection Under the Fourteenth Amendment.**

To prevail under 42 U.S.C. § 1983 for violation of his right to equal protection, plaintiff must show that defendants treated him differently from similarly situated persons and that such

---

13 https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act (last visited Feb. 14, 2022).

disparate treatment "either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted); *A.C. v. Raimondo*, 494 F. Supp. 3d 170, 194 (D. R.I. 2020). In the first place, defendants did not treat plaintiff differently – they treated him just like everyone else – *i.e.*, no mask, no entry. Second, plaintiff's so-called "right" to enter an indoor public space without wearing a face mask is by no means a "fundamental" one. See *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997) (fundamental right is one "deeply rooted in our history and traditions" or "fundamental to our concept of constitutionally ordered liberty.") Nor are those who wish to enter ABRSD property mask-less considered members of a "suspect class." Thus, the School Committee's mask mandate – which permits entry to ABRSD facilities to those who wear masks, but bars entry to those who do not – must be upheld so long as it survives rational basis review. *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *3 (N.D. Ga. May 12, 2021) (rational basis test held proper standard of review for mask mandate); *Lloyd v. School Bd. of Palm Beach County*, 2021 WL 5353879, at *11 (S.D. Fla. Oct. 29, 2021) (same) . The ABRSD mask mandate survives such review.

Government action analyzed under the rational basis standard "is accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Moreover, a classification for disparate treatment (*e.g.*, mask vs. no mask) "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Faced with the COVID-19 Pandemic and armed with guidance from the CDC and others advising that the wearing of masks (particularly indoors) helps to prevent the spread of a deadly disease, the School Committee can easily provide a rational basis for the mask mandate. See

13

*Stepien v. Murphy*, 2021 WL 5822987, at *8 (D. N.J. Dec. 7, 2021) (school mask mandate held rationally related to goal of slowing spread of COVID-19); *Gunter v. North Wasco County Sch. Dist. Bd. of Ed.*, 2021 WL 6063672, at *12 (D. Ore. Dec. 22, 2021) (statewide mask mandate in public schools held rationally related to legitimate interest in combatting spread of COVID-19). Indeed, the Supreme Court has ruled that "[s]temming the spread of COVID–19 is unquestionably a *compelling* interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020) (emphasis added). See also *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) ("Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" (quoting *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 38 (1904). Cf., *Delaney v. Baker*, 511 F. Supp. 3d 55, 73 (D. Mass. 2021) (dismissing claim that Governor Baker's mask mandate violated plaintiff's free exercise of religion). Plaintiff's equal protection claim must be dismissed.

### 2.    Plaintiff Fails to Allege a Claim for Violation of Freedom of Association Rights Under the First Amendment.

The First Amendment protects "the right of the people to peaceably assemble …." U.S. Const., amend. I. "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs …." *United States v. Cruikshank*, 92 U.S. 542, 552 (1876). See *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937) ("The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental.") More recently, the right to peaceably assemble has largely been subsumed by the freedom of association. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006). In 1958, the Supreme Court described freedom of association as a right inherent in the rights of freedom of speech and assembly. *NAACP v. Alabama ex rel Patterson*, 357 U.S. 449, 463 (1958). In short, the right of association was closely allied to freedom of speech.

14

Recent cases, however, have interpreted freedom of association more broadly to the point where the First Amendment is now interpreted to protect two types of associative freedom – the right to expressive association, and the right to intimate association. Expressive association remains closely affiliated with the right to free speech. People have the right to associate together for expressive purposes, often political purposes. *Id.*, at 463. But people also have the right to maintain close familial or other private associations free from state interference. *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984).

Typically, courts will strike down any governmental restriction that "substantially burdens" the freedom to associate unless it is supported by a "compelling" state interest. *NAACP v. Button*, 371 U.S. 415, 438 (1963). And, even if there is a compelling state interest, the means employed to further that interest must not be overbroad. *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975); *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973).

Plaintiff cannot prevail under the First Amendment, as participation in the Community Education adult volleyball league is neither expressive association nor intimate association. Expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618. Volleyball play is simply not "expressive." Intimate association is the right to associate with others in a relationship that "cultivat[es] and transmit[s] shared ideals and beliefs …." Such relationships "foster diversity and act as critical buffers between the individual and the power of the State." *Id.*, at 618-19. While individuals who sign up to play in the adult volleyball league may share an interest in sport, they are not an organization of "shared ideals and beliefs." Nor do they associate as way to insulate themselves from the "power of the State." Indeed, no public program can qualify as an "intimate association"

15

since, by definition, such associations must be private. Finally, even if plaintiff's "right" to participate in the adult volleyball league is protected under the First Amendment, any infringement on such right is supported by the "compelling" state interest of stemming the spread of COVID-19. See *Roman Catholic Diocese*, 141 S.Ct. at 67; *Jacobson*, 197 U.S. at 31 (judicial review of measure to protect public health or safety permitted only where it "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law.") Plaintiff's First Amendment claim must be dismissed.

### 3.   Plaintiff Fails to Allege Claims for Civil Rights Conspiracy.

A civil rights conspiracy under 42 U.S.C. § 1983 "is a combination of two or more persons acting in concern to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Smith v. City of Holyoke*, 2020 WL 1514610, *10 (D. Mass. March 30, 2020) (quoting *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008). To be actionable, a plaintiff must also show that the defendants acting in concert deprived him of a right secured by the Constitution or laws of the United States. *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980). Finally, to control frivolous conspiracy suits, courts insist that civil rights conspiracies be pled "with specificity." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977) (to survive motion to dismiss, plaintiff must support allegations of conspiracy "with references to material facts"); *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (same).

Here, plaintiff alleges no facts whatsoever to suggest that defendants acted jointly, in concert with one another, or pursuant to a shared plan, to deprive him of protected rights. At the outset, to the extent Superintendent Light is sued in his official capacity *only*, the suit against him must be treated in all respects the same as a suit against the entity, ABRSD. *Kentucky v. Graham*,

16

473 U.S. 159, 166 (1985). This makes ABRSD the one and only "conspirator." But even if Superintendent Light is sued in his individual capacity (which defendants deny), he acted within the scope and course of his employment as Superintendent for ABRSD. (Complaint, ¶ 68, Doc. No. 1 at 16). Thus, plaintiff fails to allege a combination of "two or more persons" acting in concert to deprive him of protected rights. By definition, a "conspiracy of one" fails to state a claim under Section 1983. *Wentworth Precious Metals, LLC v. City of Everett*, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013). See *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130-31 (1st Cir. 2008) ("[A]n entity cannot conspire with itself.") Further, as set forth above, plaintiff fails to allege a violation of his civil rights. Absent such violation, there can be no unlawful conspiracy. *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (actionable conspiracy requires "actual abridgement of some federally-secured right.") Finally, plaintiff alleges only that defendants deprive him of protected rights by engaging in "conduct in the form of conspiracy …." (Complaint, ¶ 66, Doc. No. 1 at 16). Exactly how defendants did so is left wholly to conjecture. Such conclusory allegations are not enough. Plaintiff's conspiracy claim under Section 1983 must be dismissed.

So should plaintiff's conspiracy claim under 42 U.S.C. § 1985(3). To state a Section 1985(3) conspiracy, plaintiff must show: (1) that defendants engaged in a conspiracy; (2) to deprive a person of the equal protection of the laws; and (3) that one or more conspirators committed an act (or acts) in furtherance of the object of the conspiracy; whereby (4) the plaintiff suffered injuries or was deprived of a protected right. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971); *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021); *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980). Again, the alleged conspiracy must be pled with specificity. *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3).")

Further, to be actionable, a "[S]ection 1985(3) conspiracy claim requires competent evidence that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' motivated the alleged conspirators." *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 349 (1st Cir. 1995).

Here, plaintiff once again alleges no more than a "conspiracy of one." But "there can be no such thing …" under Section 1985(3). *Horne v. City of Boston*, 509 F. Supp. 2d 97, 113 (D. Mass. 2007). Further, plaintiff alleges no racial or class-based animus on the part of the defendants. Finally, absent an alleged violation of a protected right, plaintiff states no actionable conspiracy claim. See *Gattineri v. Town of Lynnfield*, 2021 WL 3634148, at *11 (D. Mass. Aug. 17, 2021) ("Where Plaintiffs have not stated a claim for violation of any constitutionally protected right, the section 1985(3) conspiracy claim fails.") Plaintiff's conspiracy claim under Section 1985(3) must likewise be dismissed.

## C.   PLAINTIFF'S COMPLAINT FAILS TO STATE CLAIMS AGAINST DEFENDANT, SUPERINTENDENT LIGHT.

Even if the defendant, Superintendent Peter Light, is sued in his individual capacity (which defendants deny), Counts I – III of plaintiff's Complaint fail to state claims against him upon which relief can be granted.

### 1.   Superintendent Light Cannot be Sued Under the ADA (Counts I & II).

The remedy in Title II of the ADA is available only as against "public entities." 42 U.S.C. § 12132. A "public entity" is defined as any state or local government, or agency or department thereof. 42 U.S.C. § 12131(1). There is no individual liability under Title II of the ADA. *Wiesman v. Hill*, 629 F. Supp. 2d 106, 111 (D. Mass. 2009); *Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004). Therefore, Superintendent Light is entitled to dismissal under Counts I and II on this ground alone.

2.    **Superintendent Light is Entitled to Qualified Immunity Under 42 U.S.C. § 1983 (Count III).**

To determine whether a government official enjoys qualified immunity, a court must decide "whether a reasonable official [in the defendant's position] could have believed his actions were lawful in light of clearly established law." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994). The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right." *Frazier v. Bailey*, 957 F.2d 920, 930 (1st Cir. 1992). The focus is not on the merits of the underlying claim but, instead, on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. *Lowinger v. Broderick*, 50 F.3d 61, 65 (1st Cir. 1995); *Febus-Rodriguez*, 14 F.3d at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Lowinger*, 50 F.3d at 65.

As set forth above, plaintiff's allegations, even if true, do not establish viable equal protection claims under the Fourteenth Amendment and/or freedom of association claims under the First Amendment. But even if they do, plaintiff's right (if any) to enter indoor ABRSD spaces without wearing a mask was not clearly-established at the time of the Superintendent's actions. By adopting a mask mandate in the face of a deadly worldwide Pandemic, no reasonable official in the position of the Superintendent would have understood that he was violating plaintiff's constitutional rights. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right") (quotation omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the

specific context of the case, not as a broad general proposition." *Id*. Superintendent Light is entitled to qualified immunity under the circumstances alleged in plaintiff's Complaint. Therefore, Count III of the Complaint must be dismissed as against him.

## IV. CONCLUSION

For the reasons set forth above, the defendants, the Acton-Boxborough Regional School District and Superintendent Peter Light, hereby request that this Honorable Court allow their Motion to Dismiss plaintiff's Complaint and thereafter order said Complaint dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

Respectfully submitted,

The Defendants,

ACTON-BOXBOROUGH REGIONAL SCHOOL
DISTRICT and SUPERINTENDENT PETER LIGHT,

By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: February 16, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on February 16, 2022

*/s/ John J. Davis*
John J. Davis, Esq.