IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BUSH ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO:1:21-cv-12039-IT |
| ) | |
| ACTON-BOXBOROUGH REGIONAL ) | |
| SCHOOL DISTRICT and PETER LIGHT, ) | |
| SUPERINTENDENT OF THE ACTON ) | |
| BOXBOROUGH REGIONAL SCHOOL ) | |
| DISTRICT ) | |
| ) | |
| Defendants ) | |

PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS THE
COMPLAINT PURSUANT TO F.R.C.P. 12

Now comes the Plaintiff and opposes the Defendant's Motion to Dismiss the Complaint. By way of introduction, this is a simple lawsuit based upon the failure of the Defendants to comply with the Americans with Disabilities Act in which the Plaintiff's disability and the required accommodation to which he is legally entitled are defined as a matter of law by the Massachusetts Department of Public Health. The Motion to Dismiss violates F.R.C.P. 12 by asking this Court to rely upon the facts not found within the four corners of the Complaint, and to accept the Defendants' affirmative defenses as true. The Defendants, while providing 71 cited cases and a host of irrelevant additional authorities, simply ignore the two most relevant and most binding cases—one from the Massachusetts Supreme Judicial Court and another from the United States Supreme Court.

The Defendants have served a brief longer than the Plaintiff's Complaint in a futile effort to explain why this case should not go forward to discovery when the explanation of why it should is easily stated.

As noted below, more than 80 percent of the Defendants' Motion argues the Defendants' affirmative defenses or claims not made, while much of the rest simply ignores the plain reading of the Complaint itself. Thus, it is more a motion of politics and statistics than a motion to dismiss for failure to state a claim for relief. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)

According to F.R.C.P. Rule 8(a), the Plaintiff's Complaint asserting violation of the Americans Disabilities Act ("the ADA") and 42 U.S.C. §§1983 and 1985 is sufficient if it alleges the following:

1. The Plaintiff has a pre-existing disability recognized by the ADA
2. The Defendants created a policy which denied Plaintiff access to a place of public accommodation based upon his disability
3. The Defendants denied reasonable accommodation
4. The Defendants then discriminated against the Plaintiff on that basis
5. Upon being made aware they were violating the Plaintiff's civil rights, the Defendants failed to rectify their violations and acted in conspiracy to further violate those rights

In this case, the first prong is satisfied by ¶¶ 14,16 with their attendant exhibits 2 and 7. Exhibit 7 consists of a letter from Plaintiff's physician identifying the disability. "I have found him to have contraindications to mask wearing for a private medical condition…" Paragraph 14

consists of a letter from the Plaintiff to the Defendants identifying his disability and demanding accommodation. The Plaintiff has pled disability within the meaning of the ADA, notwithstanding the Defendant's argument on Page 5 of the Motion.

The second prong is established by Exhibit 1, the Defendant's policy, which bars the Plaintiff from participating in a community education program without a face covering, notwithstanding the Plaintiff's identified and legally recognized disability.

The third prong is identified by Exhibit 3, ¶18, in which the Defendants refused to provide accommodation. Accommodation in this case is actually defined by law. As noted in ¶9, the agency tasked with creating public health policy is the Department of Public Health, which issued a directive relating to mask wearing. As identified in ¶9, the state mask mandate does not apply to any "person…[who]… has a mental health or other medical diagnosis that advises against wearing a face mask or covering, or… has a disability that prevents them from wearing a face mask or covering…" The accommodation which the Defendants were obligated to offer was outright exemption. Under ¶9, the Defendants are in absolute violation of the ADA as a matter of law because the DPH, as well as the Plaintiff, says so.  The Plaintiff has pled disability within the meaning of the ADA, notwithstanding the Defendants' argument on Page 8 of the Motion.

The fourth prong is also identified by Exhibit 2, ¶18, in which Peter Light, in violation of both the ADA and the Civil Rights Act informs the Plaintiff that the Defendants are refusing to comply with the requirements imposed by law as to the Plaintiff's disability, and that they are refusing to recognize the required accommodation—outright exemption.

The final prong is established under F.R.C.P. 8 by ¶24, in which it is related that the Plaintiff appeared at the community education program without a face mask, as was his legal right under the ADA and within the guidelines of the Department of Public Health. He was

physically barred from entry to a public place on the basis of his disability by the Defendants' employee in violation of the ADA and the Civil Rights Act. Finally, it is noted in ¶24 that the Defendants violated their obligation to engage in the interactive process of accommodation, thereby further violating both the ADA and the Civil Rights Act.

These paragraphs establish a "short and plain statement of the grounds for the court's jurisdiction" under F.R.C.P. 8 such that a Motion to Dismiss is inappropriate. Under F. R. C. P. 12(b)(6), to overcome a "motion to dismiss for failure to state a claim, a complaint must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" Cutler Associates, Inc. v. Palace Construction, LLC et al 132 F.Supp.3rd 191,194 (D. Mass. 2015) citing Ashcroft v. Iqbal, 556 U.S. 662,667 (2009). The process is specific: "First, the court must separate the complaint's factual allegations, which must be accepted as true, from its conclusory legal allegations, which are not entitled to presumptions of truth….Second, the court must accept the remaining factual allegations as true and decide, if drawing all reasonable inferences in the plaintiffs' favor, they are sufficient to show an entitlement to relief." Cutler Associates, 132 F. Supp. 3rd at 194, citations omitted.

Here, the Complaint satisfies the required prongs, backed by documents and exhibits, which precludes dismissal. The balance of this brief addresses why the Defendants' Motion to Dismiss is legally and factually in error.

ALMOST ALL OF THE DEFENDANT'S MOTION IS IRRELEVANT, IMPERTINENT OR SCANDALOUS AS DEFINED BY F.R.C.P. 12(f) AND F.R.C.P. 12(b)(6)

Wading through the Defendant's lengthy brief, one wonders: Did the Defendants or their legal counsel even read the Plaintiff's Complaint? The Motion asserts that the Plaintiff's complaint fails to state a claim for relief under the ADA, which the Complaint clearly does state.

The Motion asserts that the Complaint fails to state a claim for relief under the Equal Protection Clause of the 14th Amendment, though the 14th Amendment appears nowhere in the Complaint and is not necessary to prevail in this action. The Motion asserts that the Complaint fails to state a claim for relief for violation of the right to freedom of association under the 1st Amendment, though by barring the Plaintiff from entering the public building and playing volleyball with his longtime friends and fellow volleyball players the Defendants have obviously violated the Plaintiff's right to freedom of association / assembly, which in any event is not one of the three counts of the Complaint.  The Motion asserts that Defendant Peter Light is entitled to qualified immunity in his individual capacity despite the Complaint and its exhibits having established that upon being made aware in writing that he was violating the Plaintiff's civil rights, Defendant Light sent the Plaintiff a letter denying his civil rights, and then ordered his minions to specifically bar the Plaintiff entry while allowing other persons without face coverings to enter the same building.

The Alleged Facts commencing on Page 2 do not track the Plaintiff's Complaint, and utterly disregard the specific allegations within the Complaint that the Defendants lacked legal authority to violate the Plaintiff's rights.  On page 2 of the Motion, at footnote 2, the Defendant admits that the Plaintiffs have not stipulated to the existence of a SARS-CoV-2/COVID-19, or a public health threat, yet testifies to the Court that "As of February 11, 2022, the CDC has recorded 915,425 deaths in the United States attributable to Covid-19. By the same date, Massachusetts deaths totaled 22,791" as if somehow the Plaintiff's refusal to accept the Defendant's narrative bars his legal action.

The Defendants extensively disagree with the Complaint's asserted facts (which requires this case proceed to discovery), and they strenuously argue that their position should dictate a

review of this motion, that the Court should ignore the Department of Public Health Order and the ADA and the Civil Rights Act in the interests of…. well, that's not clear. Indeed, almost all of pages 2-4 outlines the Defendants' affirmative defenses, not the Plaintiff's "alleged facts," proving that it is time to move to discovery so that the Defendants can explain their own positions in the proper forum. There is an entire section on page 9 commencing with "in his Complaint, plaintiff flatly rejects the science" and then proceeds to lecture the Court for three pages on the "science." All of this material, from page 9-12 is impertinent to a Motion to Dismiss—this material is for the Defendants' Affirmative Defenses. [1]

On Page 8, the Defendants provide a lengthy diatribe about reasonable accommodation, notwithstanding that it is pled in the Complaint that the Department of Public Health, acting within its lawful power, has already decreed that the reasonable accommodation of mask wearing is simply utter exemption. The Plaintiff has properly pled that he was denied that remedy.

Page 11 argues the "direct threat" defense, which relates to an Affirmative Defense and is entirely impertinent to a motion to dismiss. It is noted in passing that the Department of Public Health has already ruled against applicability of this Affirmative Defense, see ¶9 of the Complaint, in which the Department of Public Health stated that if a person can't wear a face covering because of disability, that person is simply exempt. Clearly, the Department of Public Health does not view this alleged virus as a direct threat to public health to warrant exemption

---

[1] The Plaintiff does not 'reject' the science; rather, the Plaintiff is 'indifferent' to the science, and contends it is irrelevant. This is a case in which the decisions of the Governor as of December 13, 2021, the General Court shortly thereafter, supported by the Supreme Judicial Court in 2020, have determined conjunctively that COVID is not a deadly emergency and that managing the public health aspects of it remain with the Department of Public Health acting under its proper legal power. Since the DPH has already deemed that people who are disabled and cannot wear a mask are exempt from wearing them, the issue is established as a matter of law. Period. Nothing gives the Defendants here the right to supersede the power of the Department of Public Health, so the use of the "science" as a defense is estopped because the DPH has already preempted the issue.  Perhaps at trial the Defendants, over Plaintiff's objection, may be able to introduce some of the science through expert witnesses with personal knowledge and subject to cross examination, but the issue is not one for this Court in a Motion to Dismiss and attempts to introduce the 'science' where it was not pled or relevant is improper under Rule 12..

from the ADA and Civil Rights strictures. Even so, the defense relates to an *individual* who poses the direct threat, not an alleged virus itself. In their Memorandum of Law, the Defendants acknowledge that, "To determine whether an individual poses a direct threat to the health or safety of others… a public entity must make an individualized assessment." The Defendants have never conducted such an individualized assessment of the Plaintiff, which is one of the grievances of this lawsuit.

All of pages 12-14 again, are arguing Affirmative Defenses and denying the stated facts in the Complaint that the Massachusetts Department of Public Health has defined the appropriate and reasonable accommodation to an inability to wear a face covering: simply don't wear one. This is not a case in which legal rights are undefined. It is a case in which the Defendants *dislike* the Plaintiff's legal rights. All of pages 12-14 are arguing an issue which is not before the court and not an element of this case.

Page 14-16 has no relationship to any element of this lawsuit whatsoever.

Pages 16-18 simply misstate the facts of the civil rights violation. In Exhibit 2, ¶18, Peter Light, in violation of both the ADA and the Civil Rights Act informs the Plaintiff that the Defendants are refusing to comply with the requirements imposed by law as to the Plaintiff's disability, and that they are refusing to accommodate. In ¶24, it is pled that the Plaintiff appeared at the community education program without a face mask, as was his legal right under the guidelines of the Department of Public Health and was physically barred from entry to a public place on the basis of his disability by the Defendant's employee in violation of the ADA and the Civil Rights Act. Two people acting together to violate the law and bar the Plaintiff entry on the basis of disability is certainly a pleading of civil rights violations of any kind.

All of page 19 is a non-sequitur.  As noted in this brief, the Plaintiff's rights are defined by the Department of Public Health. In violation of the Plaintiff's civil rights, the Defendant not only refused to abide by the law, but sent his minions to literally bar the door to a disabled person. Whether the Defendants like that or not, it is appropriately pled.

Throughout the Motion the Defendants attempt to introduce hearsay evidence, which might evolve into affirmative defense at trial, but none of this material is in any way appropriate in a Rule 12(b)(6) motion, which does not permit a court to weigh evidence between the Complaint and the Motion to Dismiss. See, Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). The court must focus on the facts as pled, not the facts as the Defendant wishes them to be pled. The court should disregard these foreign elements as being outside the scope of the Motion and should strike them under Rule 12(f).

THE DEFENDANT'S MOTION IS SIMPLY WITHIN THE WRONG BODY OF CASE LAW

The Defendant's brief is stuffed with more than 70 case cites which have no relevance to the case at bar. The Defendants, however, fail to even mention two very recent cases which explain precisely how this case must be viewed by the Court. The Court should understand, first and foremost, that this is a lawsuit about political power, not the SARS-CoV-2/COVID-19 virus. The question here is: who makes the rules, and how should the Court enforce them. In <u>Desrosiers v. Baker</u>, 486 Mass. 369 (2020) handed down by the Massachusetts Supreme Judicial Court on December 10, 2020,  "the Civil Defense Act Case,"  the Massachusetts Supreme Court determined that the Commonwealth's Governor, acting through the Civil Defense Act passed by the General Court, had the power to issue emergency orders based upon an alleged pandemic of

SARS-CoV-2/COVID-19. The Supreme Judicial Court confirmed that the General Court had delegated emergency powers to the Executive, which could be executed in the event of a civil defense emergency and that the Governor had properly exercised that power. The SJC in that case carried out its separate powers in adjudicating that result. The Plaintiff *does not* stipulate to the validity of the finding that such a civil defense emergency *ever* transpired. None the less, the SJC in the Civil Defense Act case cited the South Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613-14 (2020) affirming that "unelected state judiciary, which lacks the background, competence and expertise to assess public health and is not accountable to the people…" cannot make health policy, which is within the realm of legislatures acting in accordance with the Executive." In short, the General Court had authority to "legislate," but it also had the power to devolve the power to "regulate" within the defined parameters of the party who receives the power. The Acton Boxborough Regional School District, equally, must defer to the Department of Public Health.

In National Federation of Independent Businesses v. Department of Labor, 595 US____ (2022) ("the OSHA case"), the United States Supreme Court further explored who or what had particular agency power to make public health regulations. In the Per Curiam opinion, it was noted that "where the virus poses a special danger because of the particular features of an employee's job or workplace, targeted regulations are plainly permissible. We do not doubt…that OSHA could regulate risks associated with the Covid-19 virus…. It is telling that OSHA in its half century of existence, has never before adopted a broad public health regulation---addressing a threat that is untethered, in any causal sense, from the workplace. This 'lack of historical precedent,' coupled with the breadth of authority that the Secretary now claims, is a 'telling indication' that the mandate extends beyond the agency's legitimate reach… Administrative

9

agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." The same principal applies here—the General Court did not devolve to the Defendants the right to supersede the Department of Public Health in the formulation of health policy in the Commonwealth as it applied to this Plaintiff.

In finding the OSHA regulation problematic, the Supreme Court directed that an analysis consists of defining the scope of devolved power. Of particular interest in this case, the Supreme Court held that just because a regulating agency has power to issue regulations pertaining to certain persons within certain buildings based on the nexus of the activity to the holder of power, the same agency may not have power to regulate as to all the individuals located in the same building but do not have a nexus to the agency power. In short, the analysis is not *where* activities are taking place, or who *owns* the building, but what the people are doing within the building and whether the internal activity is within the devolved power of the agency. This holding is the crux of this case.

Thus, the Court must analyze this case as follows:

1. The community education activity from which the Plaintiff was barred was taking place in a public school building, after hours, not in the presence of students or teachers and Michael Bush was not a student, teacher or staff member of a school program.

2. The Massachusetts Department of Elementary and Secondary Education has the power, identified in its name, to regulate policy pertaining only to its devolved power, which are spelled out in its own name and do not apply to this case.

3. Under the Civil Defense Act Case from the SJC, the Department of Public Health as part of the Executive is the party with devolved power from the General Court to make regulations pertaining to public health which includes the Community Education program.

4. As noted in ¶9 of the Complaint, the Department of Public Health enacted a regulation regarding masks that exempts any kind of face covering to those with disabilities, such as the Plaintiff. The accommodation to the mask mandate as adopted by the Department of the Public Health is exemption from the mandate.

5. Just because the Defendants control the building where a community activity takes place and just because the Defendants act under the authority of the Department of Elementary and Secondary Education with regard to daytime schooling, does not give them legal power to regulate beyond their mandate in an area in which the Department of Public Health has asserted its authority to regulate; the limits of the Defendants' superintendency power would be to adopt the Department of Public Health regulation for non-elementary and non-secondary education programs, including community education, according to the United States Supreme Court in the OSHA matter.

6. The limits of the Defendants' superintendency would be to adopt the outright exemption to the mask requirement which the Plaintiff was entitled under the ADA and the Civil Rights Act.

7. Having claimed a disability that precluded mask wearing, and having shown the existence of a DPH rule which specified the remedy from mask wearing, the Defendants utterly and willfully violated both the ADA and the Civil Rights Act by exceeding devolved power.

8. The Plaintiff, having been harmed, has made a plausible claim for a remedy.

The Defendants seem to be arguing in their vague Motion that the Acton Boxborough Regional School District and its Superintendent have some sort of right to issue health policy diktat as if the law no longer applies, even though the law which applies was handed down by the

United States Supreme Court and the Supreme Judicial Court in the context of the same alleged pandemic. The Defendants' conduct was simply illegal and actionable in the context of the Plaintiff's clear disability, such that the Motion to Dismiss must DENIED.

The Motion to Dismiss does not come close to addressing the Pleading and its causes of action. The Plaintiff has provided sufficient information of his disability, acknowledged by his physician and the Department of Public Health, and the denial of the Defendants to abide by the required exemption. The Plaintiff contends that the Defendants' policy is illegal as the Defendants lack authority to impose a mask mandate greater than the DPH's regulation on the Plaintiff and in furtherance of its community education program, such that this Court should declare the policy invalid and void. The Plaintiff has further contended that his civil rights were violated when the Defendants went rogue and blocked a disabled individual from a public program at which recognition of the exemption was required in knowing violation of the law.

The Defendants have filed a 28 page brief consisting mostly of worthless argument that has no relevance and seems more interested in arguing affirmative defenses than addressing the actual Complaint. The Complaint satisfies Rule 8, thus the Motion to Dismiss must be DENIED.

       Respectfully submitted,
       **The Plaintiff**

       By his attorney,

       /s/Robert N. Meltzer
       Robert N. Meltzer, BBO #564745
       The Mountain States Law Group
       Wheelhouse at the Bradford Mill
       33 Bradford Street
       Concord, MA 01742
       Phone: (978) 254 6289
       inbox@mountainstateslawgroup.com

Dated: March 1, 2022

CERTIFICATE OF SERVICE

I hereby certify that on this day I served a copy of the foregoing by mailing the same by the electronic filing system of the US District Court.

/s/Robert N. Meltzer_____

March 1, 2022