IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BUSH )<br>)<br>Pro Se Plaintiff )<br>)<br>v. )<br>)<br>ACTON-BOXBOROUGH REGIONAL )<br>SCHOOL DISTRICT and PETER LIGHT, )<br>SUPERINTENDENT OF THE ACTON )<br>BOXBOROUGH REGIONAL SCHOOL )<br>DISTRICT )<br>)<br>____Defendants_____) | CIVIL ACTION NO: 1:21-cv-12039 |

# PLAINTIFF'S MEMORANDUM OF REASONS IN SUPPORT OF HIS MOTION FOR LEAVE TO FILE 1ST AMENDED COMPLAINT

In accordance with Local R. Civ. P. 7.1(b)(1), the Pro Se Plaintiff hereby submits this memorandum of reasons in support of his attendant motion. The certificate of service is in the motion itself.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................... 2

TABLE OF AUTHORITIES ................................................................................................................. 3

INTRODUCTION ................................................................................................................................ 5

DISABILITY WITHIN THE MEANING OF THE ADA ....................................................................... 5

THE FINDINGS AND PURPOSE OF THE ADA ................................................................................ 6

THE FOCUS WAS INCORRECTLY ON WHETHER THERE WAS DISABILITY .............................. 8

THE COURT ADDRESSED ONLY TITLE II OF THE ADA ............................................................... 8

THE PLAINTIFF HAS PROVIDED MORE INFO THAN REQUIRED .............................................. 8

REASONABLE ACCOMMODATION UNDER THE ADA ............................................................... 11

THE DEFENDANTS FAILED TO CONDUCT AN INDIVIDUALIZED ASSESSMENT .................. 12

UNLAWFULLY DISCRIMINATORY ELIGIBILITY CRITERA ........................................................ 13

THE DEFENDANTS ENGAGED IN RETALIATION AND COERCION ........................................ 13

PETER LIGHT DOES NOT HAVE QUALIFIED IMMUNITY .......................................................... 13

42 U.S.C. § 1983 AND THE A.D.A. .................................................................................................. 16

ACTON BOXBOROUGH REG. SCHOOL DIST. DOES NOT HAVE QUALIFIED IMMUNITY ..... 17

SOLIDIFIED CLAIM UNDER 42 U.S.C. § 1985 .............................................................................. 18

NEW DEFENDANTS ARE ADDED .................................................................................................. 18

NEW CLAIMS ARE ADDED ............................................................................................................. 19

NEW INFORMATION AND EVIDENCE HAS COME TO LIGHT .................................................. 19

## TABLE OF AUTHORITIES

**Cases**

982 F.3d 50 (mem.) (1st Cir. Dec. 9, 2020) ...................................................................................17
Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ..................................................................................15
Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) .............................................................17
Brandon v. Holt, 469 U.S. 464, 473 (1985) ...................................................................................17
*Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994).......................................................................15
Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 966 (9th Cir. 2010)..............................14
*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).....................................................................15
Cortez v. Cty. of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002) .............................................17
Edgerly v. City & Cty. of San Francisco, 599 F.3d 946, 960 (9th Cir. 2010) ...............................17
Eng v. Cooley, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009)...............................................................14
Fairley v. Luman, 281 F.3d 913, 916 (9th Cir. 2002) (per curiam) ..............................................17
Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008) ......................................................................17
*Gonzaga University v. Doe*, 536 U.S. 273, 284-85 (2002)............................................................16
Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir. 1992).................................14, 17
*Harlow*, 457 U.S. at 818–19..........................................................................................................15
*Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) .......................................................................14
Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 793 (9th Cir. 2016) (en banc)................................18
L.A. Police Protective League v. Gates, 907 F.2d 879, 889 (9th Cir. 1990) ................................17
Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006)................................................17
Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)..............................................................17
Owen v. City of Independence, Mo., 445 U.S. 622, 638 (1980).....................................................17
*Pierce v. Multnomah Cty., Or.,* 76 F.3d 1032, 1037 (9th Cir. 1996) .............................................15
Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018) ...........................................15
Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ......................................................................15
Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) ................................................17
Waggy v. Spokane Cty. Wash., 594 F.3d 707, 713 (9th Cir. 2010)................................................17

**Statutes**

42 U.S.C. § 12101(a)(2)...................................................................................................................6
42 U.S.C. § 12101(a)(5)...................................................................................................................7
42 U.S.C. § 12101(b)(1)...................................................................................................................7
42 U.S.C. § 12101(b)(3)...................................................................................................................7
42 U.S.C. § 12102(1) .......................................................................................................................5
42 U.S.C. § 12102(1)(A) ..................................................................................................................5
42 U.S.C. § 12102(4)(A) ..................................................................................................................6
42 U.S.C. § 1983 ..........................................................................................................2, 16, 17, 18
42 U.S.C. § 1985 ......................................................................................................................2, 18
ADA.........................................................................................................................................passim

**Other Authorities**

Governor Baker's COVID-19 Order #55 ........................................................................................8


Case 1:21-cv-12039-IT Document 29 Filed 08/22/22 Page 4 of 20

Overview – Rule of Law ..................................................................................................20

**Regulations**

28 C.F.R. § 35.130(b)(1)(iii) ............................................................................................11
28 C.F.R. § 35.130(b)(1)(vii) ...........................................................................................12
28 C.F.R. § 36.206 .........................................................................................................13
28 C.F.R. § 36.208 .........................................................................................................12
28 C.F.R. § 36.301(a) .....................................................................................................13
28 CFR § 36.101(b) ................................................................................................... 8, 11

**Rules**

Fed. R. Civ. P. 15(a)(2) ..................................................................................................20

**Constitutional Provisions**

14th constitutional amendment's equal protection clause .........................................19
free exercise of religion clause ....................................................................................19
freedom to peaceably assemble ..................................................................................19

## INTRODUCTION

The Plaintiff contends that the primary intended function of civil rights laws (including the Americans with Disabilities Act "ADA" pursuant to which he originally filed suit) is to create a seamless experience throughout society free of discrimination and segregation on the basis of individual's religions, sexes, races, and/or medical conditions or limitations. The Plaintiff further contends that when a scofflaw violates civil rights, the backup function of said laws is to provide the aggrieved person(s) with the right and ability to sue the scofflaw—thereby rectifying the unlawful discrimination and rendering punishment and deterrence. However, when the Courts make it exceedingly difficult or complicated for such an aggrieved person to uphold their violated civil rights, the civil rights laws fail to fulfill their backup function.

This Court has dismissed the Plaintiff's 1st complaint, having identified a few issues with it. To address those and other issues, the Plaintiff herewith submits his proposed 1st amended complaint as Exhibit 1.

The ADA already failed to fulfill its primary intended function between the Defendants and the Plaintiff. The question is now: Will it fulfill its intended backup function?

## DISABILITY WITHIN THE MEANING OF THE ADA

In its order dismissing the Plaintiff's 1st complaint, this Court cited 42 U.S.C. § 12102(1)(A) and 28 C.F.R. § 35.108 to imply that the only definition of disability recognized and protected by the ADA is a physical or mental impairment that substantially limits one or more major life activities. That is actually only one of three definitions the Americans with Disabilities Act ("ADA") specifies. Here is the complete list from 42 U.S.C. § 12102(1):

"As used in this chapter:

(1) **Disability**

The term "disability" means, with respect to an individual-

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3))."

To clarify for this Court that he has a qualifying disability under definitions (A) and (B), the Plaintiff has provided with his 1st amended complaint a combination of both a new letter from his physician as well as a personal affidavit.

However, it is important to recognize that the definition under (C) refers to "paragraph 3". Paragraph 3 clarifies that "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment **whether or not the impairment limits or is perceived to limit a major life activity**." (Emphasis added.)

Also, 42 U.S.C. § 12102(4)(A) tells us that, "The definition of disability in this chapter shall be construed **in favor of broad coverage of individuals** under this chapter, **to the maximum extent permitted** by the terms of this chapter." (Emphases added.)

Though the Plaintiff plausibly alleges in his 1st amended complaint (¶ 11) that he has a disability according to each of the ADA's three definitions, he need only have a disability under at least one of the definitions to assert a claim pursuant to the ADA.

## THE FINDINGS AND PURPOSE OF THE ADA

As 42 U.S.C. § 12101(a)(2) tells us, "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of

discrimination against individuals with disabilities continue to be a serious and pervasive social problem". 42 U.S.C. § 12101(a)(5) finds that, "individuals with disabilities continually encounter various forms of discrimination, including **outright intentional exclusion**, the discriminatory effects of architectural, transportation, and communication barriers, **overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation**, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;" (Emphases added). As the Plaintiff's 1st amended complaint establishes, the Defendants subjected the Plaintiff to outright intentional exclusion (¶¶ 60-64, 69, 71, 75-77, 79-80, 82-84, 94-96, 104-117, 124-126, 133-135), overprotective rules and policies (¶¶ 10, 12, 13, 16, 17, 52-55, 67-68, 127), failure to make modification to existing practices (¶¶ 10, 11, 60-64, 67-69, 71-73, 75-80, 82-83, 86, 89-90, 94-97, 98-103, 104-117, 133-135), exclusionary qualification standards and criteria (¶¶ 10, 11, 12, 13, 60-64, 69, 79-80, 85, 96, 104-117, 127), and segregation (¶¶ 10, 11, 60-64, 69, 75-77, 79-80, 82-84, 96, 104-117, 124-127).

In 42 U.S.C. § 12101(b)(1), Congress tells us that the purpose of the ADA is not merely to *lessen* or *discourage* discrimination but rather "to provide a clear and comprehensive national mandate for the **elimination** of discrimination against individuals with disabilities" (Emphasis added). In 42 U.S.C. § 12101(b)(3), Congress further states that the purpose of the ADA is also "to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities". As established in the Plaintiff's 1st amended complaint, the federal Department of Justice failed to follow through or act upon the Plaintiff's report of the Defendant's civil rights violations. This Court is now the last line of the

Federal Government obligated to uphold and enforce the Plaintiff's rights under the ADA via this lawsuit.

## THE FOCUS WAS INCORRECTLY ON WHETHER THERE WAS DISABILITY

As 28 CFR § 36.101(b) instructs, "The primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of 'disability.' The question of whether an individual meets the definition of 'disability' under this part should not demand extensive analysis." Thus, whether it be at the pleading or trial stages, the Court's focus must be on whether the Defendants subjected the Plaintiff to discrimination, not whether the Plaintiff has a qualifying disability. In the 1st amended complaint, the Plaintiff plausibly alleges that the Defendants subjected him to discrimination.

## THE COURT ADDRESSED ONLY TITLE II OF THE ADA

In its order, the Court referred to claims only under Title II of the ADA. The Defendant Acton Boxborough Regional School District actually qualifies as a covered entity under both Title II and Title III of the ADA.

## THE PLAINTIFF HAS PROVIDED MORE INFO THAN REQUIRED

To assert exemption from requirements and/or obtain reasonable accommodation from a public entity or place of public accommodation such as the Acton Boxborough Regional School District, an individual such as the Plaintiff is not required by the ADA to provide his/her personal medical information to the entity/ies from which the individual seeks accommodation. This is reflected in Governor Baker's COVID-19 Order #55 (enclosed as Exhibit 2) which states

that "a person who declines to wear a mask or cloth face covering because of a medical or disabling condition **shall not be required to produce documentation verifying the condition**, except as provided in section 3." (Emphasis added.) Section 3 then clarifies that only employers may request such documentation of their employees and only schools may request such documentation of their students participating in in-person learning. As ¶¶ 7 and 9 of the enclosed 1st amended complaint establish, the Plaintiff was neither an employee nor a student of the Defendants—he was a registrant in after-hours adult volleyball games open to the community.

There are quite a number of reasons to prohibit most entities (including the Defendants) from requesting and/or requiring an individual's medical information in order to provide accommodation pursuant to the ADA:

- The ADA cannot fulfill its purpose of **elimination** of discrimination if individuals must carry everywhere they go and reveal their private medical information to countless entities and persons with no bona fide need/authority to know, have, or assess it.
- Allowing places of public accommodation to require the personal medical information of individuals requesting reasonable accommodation pursuant to the ADA would encourage and facilitate precisely the sort of prejudice, stigmatization, and discrimination that the ADA explicitly calls out and is intended to eliminate.
- Such protected health information is covered by HIPAA Public Law 104-191 and most entities do not have HIPAA-compliant policies, practices, and IT systems in place to properly protect it.
- The people best qualified to determine what accommodation is suitable are the disabled individual and their personal health care practitioner, not the entity/ies from which the individual seeks accommodation.

Thus, all the Plaintiff had to do to obtain reasonable accommodation from the Defendants was to show up for the volleyball classes for which he was registered, not wear a face mask, explain that face masks are medically inappropriate for him if asked by staff, and play volleyball as he had for years. Had the Plaintiff taken that simple route (in accordance with the ADA), then it seems unlikely he would have been subjected to this unlawful discrimination and segregation by the Defendants. It was because the Plaintiff cared enough about civil rights for himself and others that he went to the trouble of pointing out the unlawfully discriminatory nature of the Defendants' policy and requested the Defendants rescind or alter their policy to comply with applicable laws. The Plaintiff's conscientious conduct apparently triggered the Defendants' discriminatory, retaliatory, and segregating actions against him (as alleged in the 1st amended complaint), necessitating his filing suit.

In its order, the Court faults the Doctor's Note used as an exhibit to the Plaintiff's 1st complaint in multiple respects, apparently without realizing that the Plaintiff was not obligated to provide any doctor's note or documentation at all. In its footnote number 3 on page 5 of its order, the Court even seems to take issue with how the Plaintiff's physician addressed the letter. Has the Court considered how costly and impractical it would be for a person to obtain a new medical exemption letter from their physician custom-addressed to each place of public accommodation they might visit or enter?

The Court also seems to take issue with the fact that the Plaintiff did not directly reply to Defendant Peter Light's inappropriate request for the Plaintiff's private medical information. The Plaintiff addresses this more thoroughly in the new ¶¶ 87-93 of his 1st amended complaint.

The Court states that it is unclear as to what disability the Plaintiff alleges to have. The Court also implies that by stating in his 1st complaint that he had been fully able to participate in

the adult volleyball program prior to the imposition of the mask mandate without the need for medical accommodation that the Plaintiff thereby asserted he had no medical impairment at all within the meaning of the ADA. The Court is straying into drawing medical conclusions about an individual, misapplying the ADA's multiple definitions of disability, and overanalyzing whether the Plaintiff has a qualifying disability, in violation of 28 CFR § 36.101(b). People who qualify for protection and accommodation pursuant to the ADA commonly participate in a wide range of activities (including physically active ones) with other people as long as entities abide by the ADA or—failing that—Courts uphold the ADA.

## REASONABLE ACCOMMODATION UNDER THE ADA

The Court also dismissed the Plaintiff's claims pursuant to the ADA because it asserted that the Plaintiff's allegation that the Defendants failed to provide a reasonable accommodation was conclusory rather than factual. The Plaintiff concedes that his said allegation in his 1st complaint was indeed conclusory. He did not provide the Court sufficient factual allegations in his 1st complaint so that the Court could infer that the Defendants failed to provide reasonable accommodation to the Plaintiff. The Plaintiff cures this deficiency by establishing that the accommodation of wearing a face shield the Defendants offered was neither reasonable nor safe in new ¶¶ 97-103 of his enclosed 1st amended complaint and an attendant affidavit. In the attendant affidavit the Plaintiff also plausibly alleges that the accommodation of a face shield the Defendants offered would have changed the service (i.e. participation in volleyball) the Defendants provided the Plaintiff such that the "service was not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others", in violation of 28 C.F.R. § 35.130(b)(1)(iii). In the attendant affidavit the Plaintiff also plausibly alleges that the accommodation of a face shield

would have limited him "in the enjoyment of a right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service", in violation of 28 C.F.R. § 35.130(b)(1)(vii).

Additionally, an asserted compelling interest in denying an accommodation to a particular claimant is undermined by evidence that exemptions or accommodations have been granted for other interests. See O Centro, 546 U.S. at 433, 436-37; see also Hobby Lobby, 134 S. Ct. at 2780. In ¶¶ 58-60, 123-126 of his 1st amended complaint, the Plaintiff plausibly alleges that the Defendants allowed other persons with no face coverings to be in the same building to which the Defendants denied him entry because he was not wearing a face covering.

## THE DEFENDANTS FAILED TO CONDUCT AN INDIVIDUALIZED ASSESSMENT

Admittedly, the Plaintiff did not note in his 1st complaint that the Defendants failed to conduct an individualized assessment. This is significant to establishing that the Defendants violated the Plaintiff's rights under the ADA by barring the Plaintiff from the Defendant's facility. 28 C.F.R. § 36.208 instructs that, "(a) This part does not require a public accommodation to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of that public accommodation when that individual poses a direct threat to the health or safety of others. (b) In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk."

In ¶¶ 131, 133-135 of the Plaintiff's 1st amended complaint, he plausibly alleges that the Defendants failed to conduct an individualized assessment and failed to allege he was a direct threat before barring him from their facility over a long period of time.

### UNLAWFULLY DISCRIMINATORY ELIGIBILITY CRITERA

Regarding the ADA, 28 C.F.R. § 36.301(a) instructs that, "***General.*** A public accommodation shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." In ¶¶ 10, 11, 12, 13, 60-64, 69, 79-80, 85, 96, 104-117, and 127 of the 1st amended complaint, the Plaintiff plausibly alleges that the Defendants imposed eligibility criteria that screen out people who cannot safely wear face masks from equally enjoying the services, facilities, and accommodations of the Defendant without those criteria being necessary for the provision of said services, facilities, and accommodations.

### THE DEFENDANTS ENGAGED IN RETALIATION AND COERCION

28 C.F.R. § 36.206 "Retaliation or coercion" prohibits various forms of retaliation or coercion in response to an individual exercising their rights pursuant to the ADA and is enclosed as <u>Exhibit 3</u> for the Court's convenience. The Plaintiff plausibly alleges in ¶¶ 79-84, 104-117 of the 1st amended complaint that the Defendants subjected him to retaliation and coercion, thereby violating his rights under the ADA.

### PETER LIGHT DOES NOT HAVE QUALIFIED IMMUNITY

In addressing the issue of Defendant Peter Light's qualified immunity, it appears that the Court may not have recognized that municipal personnel such as Light are simply not entitled to qualified immunity in their official capacities. "[Q]ualified immunity covers only defendants in their individual capacities." Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 966 (9th Cir. 2010). As such, municipal employees sued in their official capacity are not entitled to qualified immunity. See Eng v. Cooley, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009); Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir. 1992). Thus, Defendant Peter Light cannot enjoy qualified immunity in his official capacity.

As for Peter Light's qualified immunity in his individual capacity, assuming the Court agrees that the Plaintiff has now adequately pled his ADA, free exercise of religion, and/or peaceable assembly claims in his 1st amended complaint, the only remaining issue is whether the Plaintiff's right(s) were clearly established at the time of Peter Light's challenged conduct. In ¶¶ 61, 64-66, 69, 84-87, 110-113, 127, 136-141, 143-144, 169-171, and 191-193 of the 1st amended complaint, the Plaintiff plausibly alleges that his right(s) were clearly established and Peter Light had time to consider those rights before taking multiple actions that violated those rights under the color of law. Thus, Peter Light is not entitled to qualified immunity in his individual capacity, either. Federal courts, including the Supreme Court, have repeatedly articulated that if government personnel violate a person's rights after having had the luxury of time to consider the legality of their actions as Peter Light did, those personnel should not be protected by qualified immunity. *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) ("But why should university officers, who have time to make calculated choices about enacting or enforcing unconstitutional policies, receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting?") Defendant Peter Light also forfeited his

qualified immunity in his individual capacity by unlawful enforcement of an otherwise valid statute. Unlawful enforcement of an otherwise valid statute demonstrates unreasonable behavior depriving a government official of qualified immunity. See *Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1037 (9th Cir. 1996); *Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994).

If the Plaintiff understands this Court's order accurately, this Court seemed to be implying that it was up to the Plaintiff to clearly establish his federal rights for the Defendant. But the test is not whether a Plaintiff *articulated* his federal rights clearly, the test is merely whether the federal *rights were clear* at the time of the challenged conduct. Once a court determines that "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing [the official's] conduct." *Harlow*, 457 U.S. at 818–19.

Additionally, ¶¶ 10, 61-66, 69, 75, 79-83, and 110-113 of the Plaintiff's 1st amended complaint plausibly allege that Peter Light engaged in conduct creating supervisory liability, thereby forfeiting any qualified immunity. "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of ... subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (explaining a supervisory official is liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." (quotation marks and citation omitted)). See *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)

regarding defendants' supervisory liability in §1983 suits. (direct participation in wrongdoing, failure to remedy wrong after being informed of it, creation of policy or custom, grossly negligent supervision, or deliberately indifferent failure to act on information about constitutional violations).

### 42 U.S.C. § 1983 AND THE A.D.A.

Regarding the Plaintiff's 42 U.S.C. § 1983 claim, this Court cited "See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012) ("[W]e have already explained that § 1983 does not provide a remedy either for IDEA violations or for Rehabilitation Act or ADA violations. We see no reason why § 1985 should be any different" (internal citations omitted))." However, this contradicts both the statute itself and pertinent U.S. Supreme Court rulings.

42 U.S.C. § 1983 states clearly that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress". It does not exclude the ADA (a statutory civil right). And the U.S. Supreme Court has made clear that 42 U.S.C. § 1983 applies to constitutional and statutory rights—without excluding the ADA. *Gonzaga University v. Doe*, 536 U.S. 273, 284-85 (2002) ("Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. See supra, at 279-281. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.")

"Under the doctrine of stare decisis, all lower federal courts must follow the commands of the Supreme Court, and only the Supreme Court may reverse its prior precedent." reh'g en banc granted, opinion vacated, 982 F.3d 50 (mem.) (1st Cir. Dec. 9, 2020).

Unless this Court is going to stray into legislating by disregarding the language in the 42 U.S.C. § 1983 statute itself or stray into overriding the U.S. Supreme Court's ruling on § 1983, then § 1983 does apply to ADA violations.

Additionally, 42 U.S.C. § 1983 applies to the Defendants' violations of other constitutional and statutory rights, which have now been added to the 1st amended complaint.

## ACTON BOXBOROUGH REG. SCHOOL DIST. DOES NOT HAVE QUALIFIED IMMUNITY

Being a municipal entity, the Acton Boxborough Regional School District cannot have qualified immunity and is liable under 42 U.S.C. § 1983 for having violated the Plaintiff's clearly established constitutional and/or statutory rights. "[M]unicipalities and other local government units ... [are] among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); see also Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Edgerly v. City & Cty. of San Francisco, 599 F.3d 946, 960 (9th Cir. 2010); Waggy v. Spokane Cty. Wash., 594 F.3d 707, 713 (9th Cir. 2010); Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Cortez v. Cty. of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002); Fairley v. Luman, 281 F.3d 913, 916 (9th Cir. 2002) (per curiam); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

Local governmental units are not entitled to a qualified-immunity defense to § 1983 liability. See Brandon v. Holt, 469 U.S. 464, 473 (1985); Owen v. City of Independence, Mo., 445 U.S. 622, 638 (1980); Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir. 1992); L.A. Police Protective League v. Gates, 907 F.2d 879, 889 (9th Cir. 1990).

The Acton Boxborough Regional School District is liable under 42 U.S.C. § 1983 in this case, because as established in ¶¶ 7, 10 of the 1st amended complaint, the violation of the Plaintiff's constitutional and/or statutory rights stemmed from a municipal level policy. "To [prevail on a claim against a municipal entity for a constitutional violation], a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit." Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 793 (9th Cir. 2016) (en banc).

## SOLIDIFIED CLAIM UNDER 42 U.S.C. § 1985

As this Court noted in its order, to plead a conspiracy under 42 U.S.C. § 1985, a plaintiff must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of his rights. The Court asserted that in this Plaintiff's 1st complaint he did not sufficiently allege a deprivation of his constitutional or federal rights, thus his claim pursuant to 42 U.S.C. §1985 was not supported. The Plaintiff cures this deficiency by: 1) adding sufficient factual allegations to his 1st amended complaint to support his ADA claim, 2) adding claims pursuant to his constitutional rights under the 1st amendment, 3) adding Erin O'Brien Bettez as a Defendant, and 4) adding ¶¶ 75, 104-113 to his enclosed 1st amended complaint. Taking these new factual allegations and affidavit in a light most favorable to the Plaintiff, this Court may plausibly infer that Defendants Peter Light and Erin O'Brien Bettez 1) never stood guard at a building entrance before or after segregating the Plaintiff out of their facility, and 2) conspired to target specifically the Plaintiff for segregation in violation of his federal constitutional and statutory rights.

## NEW DEFENDANTS ARE ADDED

As Dawn Bentley and Erin O'Brien Bettez failed to act to correct violation of the Plaintiff's constitutional and/or civil rights and/or engaged in those violations, they have each been added as Defendants and pertinent factual allegations have been added to the 1st amended complaint.

## NEW CLAIMS ARE ADDED

New claims are added with supporting factual allegations to the 1st amended complaint as follows:

1. Violation of free exercise of religion clause
2. Violation of freedom to peaceably assemble
3. Violation of 14th constitutional amendment's equal protection clause

## NEW INFORMATION AND EVIDENCE HAS COME TO LIGHT

Relevant information, events, and evidence have come to light since the Plaintiff's filing of his 1st complaint. Briefly, such new material that has been added to the 1st amended complaint includes but is not limited to: 1) the Defendants failed to refund money owed to the Plaintiff, 2) unearthed damning communications amongst the Defendants, 3) other places of public accommodation in the same region were allowing people to play volleyball without masks while the Defendants barred the Plaintiff from their facility and volleyball games on that basis, and 4) fraud and misrepresentation underlying the Defendants' challenged unlawfully discriminatory conduct.

"The courts play an integral role in maintaining the rule of law, particularly when they hear the grievances voiced by minority groups or by those who may hold minority opinions." ~

Overview – Rule of Law at https://www.uscourts.gov/educational-resources/educational-activities/overview-rule-law (Last visited August 18, 2022.)

Wherefore, in accordance with Fed. R. Civ. P. 15(a)(2), the Pro Se Plaintiff requests this Court give him leave to file the enclosed 1st amended complaint.

Respectfully Submitted,

Dated: August 22, 2022

*Michael Bush*, Pro se
Michael Bush
280 Lowell Street
Carlisle MA 01741
Phone: 978-734-3323
Email: bmoc54@verizon.net