UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| MICHAEL BUSH, | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | )   C.A. NO. 1:21-cv-12039-IT |
| | ) |
| ACTON-BOXBOROUGH REGIONAL SCHOOL | ) |
| DISTRICT, PETER LIGHT, DAWN GRIFFIN | ) |
| BENTLEY and ERIN O'BRIEN BETTEZ, | ) |
| *Defendants*. | ) |

## TABLE OF CONTENTS

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6) ..................................................................................................1

I. ALLEGED FACTS ...................................................................................3

II. STANDARD OF REVIEW .....................................................................4

III. ARGUMENT ...........................................................................................5

    A.    THIS COURT SHOULD FOLLOW THE RECENT DECISION IN *BUSH V. FANTASIA* AND DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT IN ITS ENTIRETY UNDER RULE 12(b)(6). ..............................5

    B.    THE ABRSD SCHOOL COMMITTEE HAD LEGAL AUTHORITY TO ISSUE A MASK MANDATE FOR THE 2021-2022 SCHOOL YEAR IN RESPONSE TO THE COVID-19 PANDEMIC. ....................................7

    C.    COUNT I FAILS TO STATE A CLAIM UNDER TITLE II OF THE ADA. ..................................................................................................10

    D.    COUNT II FAILS TO STATE A SUBSTANTIVE DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983. .......................................................14

    E.    COUNT IV FAILS TO STATE A FREE EXERCISE CLAIM UNDER THE FIRST AMENDMENT. ..................................................................15

    F.    COUNT V FAILS TO STATE A PEACEABLE ASSEMBLY CLAIM UNDER THE FIRST AMENDMENT. ....................................................16

G.    COUNT VI FAILS TO STATE AN EQUAL PROTECTION CLAIM UNDER THE FOURTEENTH AMENDMENT....................................................17

H.    COUNT III FAILS TO STATE A CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985........................................................................................19

I.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY...............................................................................................20

IV.  CONCLUSION....................................................................................................20

CERTIFICATION PURSUANT TO LOCAL RULE 7.1 ...........................................21

CERTIFICATE OF SERVICE ....................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Alexis v. McDonald's Restaurants of Mass., Inc.*,
   67 F.3d 341 (1st Cir. 1995) ................................................................. 19

*Alston v. Spiegel*,
   988 F.3d 564 (1st Cir. 2021) ............................................................. 4, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 4, 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 4, 5

*Bragdon v. Abbott*,
   524 U.S. 624 (1998) .......................................................................... 11

*Bryant v. Caritas Norwood Hosp.*,
   345 F. Supp. 2d 155 (D. Mass. 2004) ..................................................... 11

*Buchanan v. Maine*,
   469 F.3d 158 (1st Cir. 2006) ................................................................ 12

*Bush v. Fantasia*,
   2022 WL 4134501 (D. Mass. Sept. 12, 2022) ..................................... *passim*

*Calvary Chapel of Bangor v. Mills*,
   459 F. Supp.3d 273 (D. Me. 2020) ........................................................ 14

*Carreras v. Sajo, Garcia & Partners*,
   596 F.3d 25 (1st Cir. 2010) ............................................................. 10, 12

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) ............................................................... 17

*Charles v. Johnson*,
   18 F.4th 686 (11th Cir. 2021) .............................................................. 11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) .......................................................................... 16

*Cousins v. Wigoda*,
   419 U.S. 477 (1975) .......................................................................... 17

*DePoutot v. Raffaelly*,
    424 F.3d 112 (1st Cir. 2005)..................................................................... 15

*Doe v. Univ. of Md. Med. Syst. Corp.*,
    50 F.3d 1261 (4th Cir. 1995) .................................................................... 14

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ..................................................................................... 5

*Family Freedom Endeavor, Inc. v. Riley*,
    2021 WL 6298346 (Mass. Super. Ct. Nov. 16, 2021)......................... 9, 15

*FCC v. Beach Communications, Inc.*,
    508 U.S. 307 (1993) .................................................................................. 18

*Fortuna v. Town of Winslow*,
    2022 WL 2117717 (D. Me. June 13, 2022)............................................. 14

*Gattineri v. Town of Lynnfield*,
    2021 WL 3634148 (D. Mass. Aug. 17, 2021) ..................................... 7, 19

*Grace United Methodist Church v. City of Cheyenne*,
    451 F.3d 643 (10th Cir. 2006) .................................................................. 16

*Griffin v. Breckenridge*,
    403 U.S. 88 (1971) .................................................................................... 19

*Gunter v. North Wasco County Sch. Dist. Bd. of Ed.*,
    2021 WL 6063672 (D. Ore. Dec. 22, 2021)............................................. 18

*Harding v. Cianbro Corp.*,
    436 F. Supp. 2d 153 (D. Me. 2006) .......................................................... 11

*Heller v. Doe by Doe*,
    509 U.S. 312 (1993) .................................................................................. 18

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ..................................................................... 12

*Jacobson v. Comm. of Mass.*,
    197 U.S. 11 (1904) .......................................................................... 7, 14, 15

*Kusper v. Pontikes*,
    414 U.S. 51 (1973) .................................................................................... 17

*Lloyd v. School Bd. of Palm Beach County*,
   2021 WL 5353879 (S.D. Fla. Oct. 29, 2021) ............................................. 18

*Mancini v. City of Providence*,
   909 F.3d 32 (1st Cir. 2018) ....................................................... 11, 12

*Mozert v. Hawkins Cty. Bd. of Ed.*,
   827 F.2d 1058 (6th Cir. 1987) ......................................................... 16

*Mulero-Carrillo v. Román-Hernández*,
   790 F.3d 99 (1st Cir. 2015) .......................................................... 15

*NAACP v. Alabama ex rel Patterson*,
   357 U.S. 449 (1958) ................................................................ 16

*NAACP v. Button*,
   371 U.S. 415 (1963) ................................................................ 17

*Olmstead v. L.C., ex rel Zimring*,
   527 U.S. 581 (1999) ................................................................ 12

*Papasan v. Allain*,
   478 U.S. 265 (1986) ................................................................. 4

*Parker v. Hurley*,
   514 F.3d 87 (1st Cir.), *cert. denied*, 555 U.S. 815 (2008) ..................... 6, 15

*Parker v. Landry*,
   935 F.3d 9 (1st Cir. 2019) ......................................................... 19

*Parks v. Port of Oakland*,
   2017 WL 2840704 (N.D. Cal. July 3, 2017) .......................................... 12

*Pletcher v. Giant Eagle, Inc.*,
   2020 WL 6263916 (W.D. Pa. Oct. 23, 2020) .......................................... 13

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984) ............................................................. 16-17

*Roman Catholic Diocese of Brooklyn*,
   141 S.Ct. 63 (2020) ............................................................ 17, 18

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ......................................................... 4

*School Dist. of Abington Township, PA v. Schempp*,
  374 U.S. 203 (1963) ............................................................................................... 15

*South Bay United Pentecostal Church v. Newsom*,
  140 S.Ct. 1613 (2020) ........................................................................................... 18

*Stepien v. Murphy*,
  2021 WL 5822987 (D. N.J. Dec. 7, 2021) ............................................................ 18

*Swanson v. Guthrie Ind. Sch. Dist. No. I-L*,
  135 F.3d 694 (10th Cir. 1998) .............................................................................. 16

*Theriault v. Flynn*,
  162 F.3d 46 (1st Cir. 1998) .................................................................................... 6

*Together Employees v. Mass. Gen'l Brigham, Inc.*,
  573 F. Supp. 3d 412 (D. Mass. 2021) .............................................................. 3, 14

*W.S. by Sonderman v. Ragsdale*,
  2021 WL 2024687 (N.D. Ga. May 12, 2021) ...................................................... 18

*Washington v. Glucksberg*,
  521 U.S. 702, 727 (1997) ...................................................................................... 18

**Statutes**

42 U.S.C. § 1983 ................................................................................................ 14, 17
42 U.S.C. § 1985 ...................................................................................................... 19
42 U.S.C. § 12102(1)(A) ................................................................................... 10, 11
42 U.S.C. § 12131(2) ............................................................................................... 14
42 U.S.C. § 12132 ................................................................................................... 12

M.G.L. c. 17, § 2A .................................................................................................... 8
M.G.L. c. 69, § 1B .................................................................................................... 9
M.G.L. c. 76, § 15 .................................................................................................... 9

**Rules**

Fed.R.Civ.P. 8(a) ...................................................................................................... 7
Fed.R.Civ.P. 41(b) .................................................................................................... 7

**Regulations**

28 C.F.R. § 35.108 .................................................................................................. 10

28 C.F.R. § 35.108(c)(1)(i) ..................................................................................... 11

28 C.F.R. § 35.108(c)(2)(ii) .................................................................................... 11

28 C.F.R. § 35.108(d)(1)(v) .................................................................................... 12

29 C.F.R. § 1630.2(h) ............................................................................................. 10

603 CMR § 27.08(1) .................................................................................................. 8

**Other Authorities**

Governing Through the 'New Normal': COVID-19 Lessons Learned on Local Government Law, the Constitution and Balancing Rights in Times of Crises,
50 Stetson L. Rev. 547 (Summer 2021) .................................................................. 13

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
### TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)

*Pro se* plaintiff, Michael Bush, brings this action against the Acton-Boxborough Regional School District ("ABRSD"), Superintendent Peter Light, former Assistant Superintendent Dr. Dawn Bentley, and Director of Community Education Erin Bettez. Suit arises out of a mask mandate adopted by the Acton-Boxborough Regional School Committee ("School Committee") for the 2021-2022 school year in response to the COVID-19 Pandemic.[1] Based on recommendations of the Centers for Disease Control and Prevention ("CDC") and American Academy of Pediatrics, the mandate required all students, staff and visitors to wear a face mask when inside ABRSD facilities regardless of vaccination status. (First Amended Complaint, Ex. 1, ECF Doc. No. 29-7). Claiming the mask mandate violated Title II of the Americans with Disabilities Act ("ADA") and his constitutional rights as guaranteed under the First and Fourteenth Amendments, plaintiff, Michael Bush (a visitor), originally filed this action against the ABRSD and Superintendent Light on December 14, 2021.[2] On August 9, 2022, this Court granted defendants' Motion to Dismiss plaintiff's original Complaint under Rule 12(b)(6) for failure to state a claim. (ECF Doc. No. 26). In so doing, the Court also indicated it would consider a motion for leave to amend the Complaint provided such motion was filed within 14 days and accompanied by a proposed Amended Complaint. (*Id.*, at 11 n. 9).

On August 22, 2022, plaintiff filed a Motion for Leave to File First Amended Complaint (ECF Doc. No. 28) together with a Memorandum of Reasons in Support thereof (ECF Doc. No. 29) and proposed First Amended Complaint. (ECF Doc. No. 29-4). On September 12, 2022, this

---

[1] The mask mandate was lifted by ABRSD on February 28, 2022.

[2] At that time, plaintiff was represented by counsel. On August 23, 2022, this Court allowed plaintiff's counsel's Motion to Withdraw. (ECF Doc. No. 30).

Court allowed plaintiffs' Motion for Leave to File First Amended Complaint as "unopposed." (ECF Doc. No. 36). In his First Amended Complaint, plaintiff advances the same claims against the same defendants targeted in his original Complaint, but also adds two new defendants as well as a claim based on the alleged violation of his rights to the free exercise of religion as protected under the First Amendment. (ECF Doc. No. 37, Count IV).[3]

At the hearing held on defendants' Motion to Dismiss plaintiff's original Complaint, plaintiff admitted that the civil rights at issue all arise out of his alleged disability. (ECF Doc. No. 26, at 7 n. 6). Yet, in true shotgun fashion, plaintiff continues to maintain that the mask mandate violated multiple rights for which he is now entitled to recovery. He seeks relief in six Counts:

| COUNT | CAUSE OF ACTION | DEFENDANT(S) |
|-------|-----------------|--------------|
| I | Title II of the ADA, 42 U.S.C. § 12132 | ABRSD |
| II | 42 U.S.C. § 1983[4] | All Defendants |
| III | 42 U.S.C. § 1985 | Peter Light & Erin Bettez |
| IV | Violation of Free Exercise Clause of First Amendment | All Defendants |
| V | Violation of Peaceable Assembly Clause of First Amendment | All Defendants |
| VI | Violation of Equal Protection Clause of Fourteenth Amendment | All Defendants |

Once again, however, plaintiff's First Amended Complaint fails to state claims upon which relief can be granted and, therefore, must be dismissed. Defendants submit this Memorandum of Law in Support of their Motion to Dismiss.

---

3 Plaintiff's First Amended Complaint totals 31 pages and 199 paragraphs. Attached to the First Amended Complaint are three sworn Affidavits and 22 Exhibits totaling an additional 181 pages. Although such a pleading is hardly the "short and plain" statement of claims to which defendants and this Court are entitled under Fed.R.Civ.P. 8(a), defendants do not at this time move to involuntarily dismiss plaintiff's First Amended Complaint under Fed.R.Civ.P. 41(b) for failure to comply with the Federal Rules of Civil Procedure, but choose instead to focus on the substance of plaintiff's allegations. Nevertheless, as set forth below, more is clearly not better.
4 Although not entirely clear, it appears Count II asserts a claim for the alleged violation of plaintiff's substantive due process rights as protected under the Fourteenth Amendment.

## I. ALLEGED FACTS

In August 2020, the School Committee (like nearly all school districts throughout the Commonwealth) adopted policies to address the issue of public safety within its schools in the wake of the COVID-19 Pandemic. The disease is highly contagious and can lead to severe illness and death. *Together Employees v. Mass. Gen'l Brigham, Inc.*, 573 F. Supp. 3d 412, 432 (D. Mass. 2021). In August 2021, the School Committee revised and readopted its COVID-19 policies for the upcoming 2021-2022 school year in accordance with guidance from the Massachusetts Department of Elementary & Secondary Education ("DESE"). School Committee Policy "EBCFA – Masks/Face Coverings" states, in part, as follows:

> According to public health experts and guidance from the Centers for Disease Control and Prevention (CDC) and the Massachusetts Department of Public Health (MDPH), face coverings/mask-wearing is an important component in the prevention and control of COVID-19 in concert with physical distancing and other measures and offers one of the best ways to mitigate their spread for the safety of our school community.
> ….
> The Acton-Boxborough Regional School District (ABRSD) may at times mandate the use of face coverings/masks that cover the nose and mouth (as defined in EBCFA-R) by all individuals (including visitors) in school buildings, on school grounds and on school transportation, even when physical distancing is observed. Such mandates will be developed and enacted by the District Administration and may be amended periodically in response to public health conditions with regard to the spread of COVID-19.[5]

School Committee Policy "EBCFA-R – Requirement to Wear Masks/Face Coverings" states, in part, as follows:

> Given the recent increase in the spread of COVID-19 throughout the state and region, and based upon the recommendations of Centers for Disease Control and Prevention (CDC) and the American Academy of Pediatrics, **the District will begin the 2021-2022 school year by requiring all students and staff PK-12, regardless of vaccination status, *to wear a mask when indoors.***
> …..
> **Visitors**

---

[5] A true and accurate copy of School Committee Policy EBCFA is attached to defendants' original Motion to Dismiss as Exhibit "A." (ECF Doc. No. 13-1).

- All visitors, where permitted, to schools for meetings and events are required to wear a mask when indoors.

(First Amended Complaint, Ex. 1, ECF Doc. No. 29-7) (emphasis in original).

In the fall of 2021, plaintiff registered for the ABRSD Community Education adult volleyball league. (*Id.*, ¶ 9). Because league games are played in ABRSD facilities, participants were required to wear face masks in accordance with School Committee policies. (*Id.*, ¶¶ 8 & 10). Mr. Bush objected to the mask requirement, claiming masks are "medically contraindicated" and "medically inappropriate" for him. (*Id.*, ¶¶ 11, 63 & 120). He provided a doctor's note to this effect to ABRSD. (*Id.*, ¶ 11; Ex. 2, ECF Doc. No. 29-8). Plaintiff demanded an accommodation from ABRSD in the form of a medical exemption from the mask mandate. (*Id.*, ¶ 80). The defendant declined, suggesting Mr. Bush wear a face shield instead of a face mask. Mr. Bush refused. (*Id.*, ¶ 98). On September 21, 2021, Ms. Bettez barred Mr. Bush from entry and participation in the adult volleyball league at Superintendent Light's instruction. (*Id.*, ¶ 113). This litigation ensued.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). See *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (court should ignore statements "that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). In other words, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Twombly*, 550 U.S. at 555). A mere "possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2007, the Supreme Court restated the well-known standard that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Two years later, the Supreme Court clarified *Twombly* by stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679.

### III.  ARGUMENT

**A.     THIS COURT SHOULD FOLLOW THE RECENT DECISION IN *BUSH V. FANTASIA* AND DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT IN ITS ENTIRETY UNDER RULE 12(b)(6).**

On November 4, 2021, Mr. Bush and eleven other *pro se* plaintiffs filed a similar action against the Town of Carlisle, MA, and eight current and former Town officials challenging mask mandates implemented by the Carlisle Board of Health ("BOH") and Trustees of the Gleason Public Library.[6] In their Complaint, plaintiffs claimed (among other things) that the mask mandates discriminated against them because of their disabilities in violation of Title II of the ADA, violated their rights to due process and equal protection as guaranteed under the Fourteenth Amendment, and violated their rights to the free exercise of religion and to peaceably assemble as guaranteed under the First Amendment.[7] *Bush v. Fantasia*, 2022 WL 4134501, at \*5 (D. Mass. Sept. 12, 2022).

---

6 Mr. Bush is also a *pro se* plaintiff in a third COVID-19 mask mandate case: *Michael Bush v. The Wang Center for the Performing Arts, Inc. d/b/a The Boch Center*, C.A. No. 1:22-cv-10473-GAO. The Wang Center's Motion to Dismiss plaintiff's First Amended Complaint was argued before Magistrate Judge Jennifer Boal on August 10, 2022 and remains under advisement.
7 While not all such claims were pled in plaintiffs' original Complaint, the Court nonetheless considered them since they were raised in plaintiffs' opposition to defendants' Rule 12(b)(6) motion.

Defendants moved to dismiss plaintiffs' Complaint under Rule 12(b)(6). On September 12, 2022, Judge Allison Burroughs allowed defendants' motion and dismissed plaintiffs' Complaint.

As a preliminary matter, the Court found that the BOH and Trustees had statutory authority to issue mask mandates. "Defendants responsibly relied on guidance from state and federal officials, including 'overwhelming medical evidence' regarding the utility of face masks in reducing the spread of COVID-19." *Id.*, at *5. In the face of such authority, the Court summarily rejected all of plaintiffs' claims. Regarding their ADA[8] claim, the Court concluded that plaintiffs failed to allege sufficient facts to show they were "disabled" within the meaning of the ADA, or otherwise discriminated against "by reason of" such disabilities. *Id.*, at *9. The Court further noted that "the ADA allows public entities to consider whether even otherwise qualified applicants for accommodation pose a direct threat to the health and safety of others." *Id.* (citing *Theriault v. Flynn*, 162 F.3d 46, 48 (1st Cir. 1998)). Nor could plaintiffs raise a substantive due process challenge absent a showing that the mask mandates implicated a fundamental right, constituted an irrational response to the COVID-19 Pandemic, or evidenced governmental action that shocked the conscience. *Id.*, at **7 – 8. Plaintiffs made no such showing.

To prevail on a free exercise claim, a plaintiff must demonstrate that a government action has a "coercive effect … [on] the practice of his religion." *Parker v. Hurley*, 514 F.3d 87, 103 (1st Cir.), *cert. denied*, 555 U.S. 815 (2008) (quotation omitted). Because Mr. Bush and the other plaintiffs failed to identify any religious practice or to detail the coercive effect of mask mandates on such practice, the Court dismissed their free exercise claim as well. *Bush v. Fantasia*, at *6. Even if plaintiffs adequately alleged a burden on their religion (which they did not), the mask

---

8 Plaintiffs abandoned their ADA claim against the BOH because its mask mandate included a carveout for medical exceptions, but continued to challenge the Library mask mandate which included no such carveout.

mandates did not single them out on the basis of their religion but instead "applied equally to all …." Id., at *6. Thus, the mask mandates "easily" withstood both the rational basis test as well as the "far more deferential *Jacobson* review." Id., at **6-7 (interpreting *Jacobson v. Comm. of Mass.*, 197 U.S. 11, 38 (1904)).

Plaintiffs' equal protection claim was equally unavailing. Because the mask mandates were "rational," the Court ruled plaintiffs could not state a viable claim under the Equal Protection Clause. *Id.*, at *7. In reaching her decision, Judge Burroughs cited the recent case of *Lowe v. Mills*, where the District Court of Maine dismissed an equal protection challenge to a vaccine mandate for health care workers once it determined the mandate did not violate their free exercise of religion rights. 2022 WL 3542187, *14 (D. Me. Aug. 18, 2022).

Finally, the Court dismissed plaintiffs' claim that the mask mandates somehow infringed upon their right to peaceably assemble. To state a peaceable assembly claim, a plaintiff must allege sufficient facts to show that the governmental action affects "existing members' ability to carry out their various purposes" in a "significant way." *Bush v. Fantasia*, at *7 (quoting *Gattineri v. Town of Lynnfield*, 2021 WL 3634148, at *9 (D. Mass. Aug. 17, 2021)). *Pro se* plaintiffs "alleged no facts to support the contention that the mask mandates inferred [sic] with their rights to engage with activities protected by the First Amendment in public places or to associate with others with shared ideals or beliefs." *Id.* This Court should follow the reasoning of *Bush v. Fantasia* and dismiss Mr. Bush's nearly identical claims against the ABRSD and its officials.

**B.      THE ABRSD SCHOOL COMMITTEE HAD LEGAL AUTHORITY TO ISSUE A MASK MANDATE FOR THE 2021-2022 SCHOOL YEAR IN RESPONSE TO THE COVID-19 PANDEMIC.**

On May 28, 2021, Governor Charlie Baker terminated the state of emergency he had declared 14 months earlier and rescinded many prior COVID-19 Orders, including Order No. 67

which required that face masks be worn in indoor public locations. At the same time, however, Governor Baker also declared that an emergency "detrimental to the public health" continues to exist. Under Massachusetts law, this declaration effectively empowered the Commissioner of the Department of Public Health ("DPH"), to "take such action … as he may deem necessary to assure the maintenance of public health and the prevention of disease." M.G.L. c. 17, § 2A. It also triggered Massachusetts regulations regarding public school safety.

> Upon declaration by the Governor that an emergency exists which is detrimental to the public health, or upon a determination by the Board that exigent circumstances exist that adversely affect the ability of students to attend classes in a safe environment, … the [DESE] Commissioner … shall issue health and safety requirements and related guidance for districts.

603 CMR § 27.08(1). On August 24, 2021 (the eve of the 2021-2022 school year), the DESE Board voted to declare "exigent circumstances" pursuant to 603 CMR § 27.08(1) and require the wearing of face masks in all public schools by students (age 5 and above), staff and visitors.[9] Three days later, DESE and the DPH jointly issued "COVID-19 Guidance for Districts Schools: Fall 2021"[10] detailing implementation of the mask mandate in public schools.

In subsequent actions filed in six Massachusetts Superior Courts, Children's Health Rights of Massachusetts (a non-profit organization of volunteer parents) and others immediately challenged the statewide mask mandate adopted for school children by the DESE Commissioner. After consolidating the cases, Hampden Superior Court Judge David Hodge denied plaintiffs' Motion for a Preliminary Injunction (seeking to enjoin enforcement of the mandates) on the grounds that plaintiffs failed to demonstrate a substantial likelihood of success on the merits or

---

9 See https://41g41s33vxdd2vc05w415s1e-wpengine.netdna-ssl.com/wp-content/uploads/2021/08/DESE_2021-0825mask-requirement.pdf (last visited Sept. 25, 2022).
10 See https://archives.lib.state.ma.us/bitstream/handle/2452/848449/on1266224136-English.pdf?sequence=1&isAllowed=y (last visited Sept. 25, 2022).

that they would suffer irreparable harm if such injunctive relief was denied. *Family Freedom Endeavor, Inc. v. Riley*, 2021 WL 6298346, at *8 (Mass. Super. Ct. Nov. 16, 2021). In reaching his decision, Judge Hodge ruled that DESE has the authority to issue a mask mandate under M.G.L. c. 69, § 1B (which evinces a legislative intent that DESE shall ensure students attend classes in a healthy and safe educational environment). Further, school districts and municipalities "have ample and well-established power to impose measures to protect the general welfare and best interests of their students." *Id.*, at *13. In support of this conclusion, Judge Hodge cited *Jacobson* (among other cases), as well as M.G.L. c. 76, § 15, which requires vaccinations for students to attend schools.   In rejecting plaintiffs' argument that the mask mandates violate parents' constitutional rights to make decisions regarding their children's health, Judge Hodge wrote:

> The record compels the conclusion that the mask mandates in Massachusetts public schools bear a substantial relation to the protection of public health. At the State and local levels, the mandates were created, tailored, and implemented in consultation with medical experts and on the basis of widely accepted public health recommendations. They serve the legitimate State interest of slowing the spread of COVID-19. Accordingly, the mandates easily withstand rational basis review.

*Family Freedom*, at *13.

On January 25, 2022, a single justice of the Massachusetts Appeals Court affirmed the decision below, concluding that the Legislature granted DESE "broad authority to set policies and standards for the education of public school students in Massachusetts including the wearing of masks to reduce the spread of COVID-19 …."[11] In compliance with DESE requirements, the School Committee adopted a mask mandate for ABRSD schools for the 2021-2022 school year. It cannot be faulted for doing so.

---

11 A copy of the single justice decision is attached to defendants' Motion to Dismiss as Exhibit A.

9

**C.      COUNT I FAILS TO STATE A CLAIM UNDER TITLE II OF THE ADA.**

Count I of plaintiff's First Amended Complaint is subject to dismissal on four grounds. First, plaintiff fails to allege sufficient facts to show that he is a "qualified individual with a disability." A disability is "a physical or mental impairment that substantially limits one or more major life activities …." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108. See *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010) (plaintiff bears burden of establishing disability sufficient to state a prima facie of discrimination). Mr. Bush fails to allege a "disability" within the meaning of the ADA. He alleges no "physical or mental impairment," but pleads only that wearing a face mask is "medically contraindicated" for him. (ECF Doc. No. 37, ¶ 11). In an Affidavit attached to his First Amended Complaint, plaintiff declines to expand upon his alleged "impairment," but claims only that mask-wearing impacts his "breathing, walking, bending, lifting, carrying, shopping, performing manual tasks, doing errands, speaking, communicating, obtaining food, and interacting with others." (ECF Doc. No. 29-1). Plaintiff's alleged "impairment," however – *i.e.*, the physiological disorder or condition affecting one or more of his body systems – remains a mystery. 29 C.F.R. § 1630.2(h). This Court previously stated it was "unclear as to what disability Bush alleges to have." (ECF Doc. No. 26, at 5). Plaintiff's First Amended Complaint fails to clarify this issue.

Further, it is plaintiff's burden to show that his alleged disability "substantially limits one or more major life activities …." 42 U.S.C. § 12102(1)(A). Without disclosing his physiological disorder or condition, plaintiff nonetheless alleges that playing volleyball is a "major life activity" for him. (Complaint, ECF Doc. No. 1, at 3).[12] "The identification of a major life activity is a

---

12 While his original Complaint is no longer the operative pleading, plaintiff continues to cite the ABRSD adult volleyball program in his First Amended Complaint as the only activity he was unable to enjoy due to defendants' alleged discrimination. (ECF Doc. No. 37, ¶¶ 128 – 132).

necessary step in proving a disability." *Charles v. Johnson*, 18 F.4th 686, 703 (11th Cir. 2021)

(citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). See *Mancini v. City of Providence*, 909 F.3d

32, 42 (1st Cir. 2018). A "major life activity" is defined to include, but not limited to:

> Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working ….

28 C.F.R. § 35.108(c)(1)(i). It also includes the operation of major bodily functions. 28 C.F.R.

§ 35.108(c)(1)(i). The "touchstone" for determining whether an activity is a "major life activity"

is its "significance." *Bragdon*, 524 U.S. at 638. "Whether an activity is a major life activity is not

determined by reference to whether it is of central importance to daily life." 28 C.F.R.

§ 35.108(c)(2)(ii). Still, a "major" life activity must be more than a mere pastime or hobby.

Pastimes and hobbies are of far lesser importance (and of a lower degree) than the types of

activities enumerated in the definition above and, thus, should not be used to define one's disability

status. See *Harding v. Cianbro Corp.*, 436 F. Supp. 2d 153, 173 (D. Me. 2006) (climbing held not

a "major life activity"); *Bryant v. Caritas Norwood Hosp.*, 345 F. Supp. 2d 155, 165 (D. Mass.

2004) (nighttime driving held not a "major life activity"). While the term "major" does not impose

a "demanding standard," it must still be interpreted to impose at least some standard. Under any

standard, playing adult volleyball should not be considered a "major life activity."

Finally, to establish his disability, plaintiff must show that his impairment imposes a

"substantial" limitation on a major life activity. 42 U.S.C. § 12102(1)(A).

> An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

28 C.F.R. § 35.108(d)(1)(v); *Carreras*, 596 F.3d at 33. According to the First Circuit, the determination as to whether an impairment "substantially limits" a major life activity "calls for a comparison between the plaintiff's limitations and those of the majority of people in the general population." *Mancini*, 909 F.3d at 42. To make this comparison, a court should take into account "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Parks v. Port of Oakland*, 2017 WL 2840704, at *4 (N.D. Cal. July 3, 2017). The ABRSD mask mandate does not "substantially limit" plaintiff's ability to play adult volleyball, any more than it limits the ability of other league players (*i.e.*, the general population) who likewise play and compete while wearing masks. The impairment is temporary, and its long term impact is negligible. Thus, plaintiff fails to allege sufficient facts to establish a "disability."

Second, to recover under the ADA, a "plaintiff must demonstrate that a denial of benefits occurs 'by reason of ... disability,' 42 U.S.C. § 12132, which essentially means that the plaintiff must prove that the denial is 'because of' the disability …." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003) (quoting *Olmstead v. L.C., ex rel Zimring*, 527 U.S. 581, 601 (1999) (Kennedy, J., concurring)). Here, plaintiff cannot show he was denied the benefits of the adult volleyball program "by reason of" or "because of" of his alleged "disability." Rather, he was denied the benefits of the program because – unlike all other players – he refused to wear a face mask during the COVID-19 Pandemic. See *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006) (plaintiff failed to allege denial of benefits was "by reason of" his mental illness where police training was insufficient to assist officers in communicating with mentally ill patients); *Bush v.*

*Fantasia*, 2022 WL 4134501, at \*9 (plaintiffs fail to plead facts to plausibly suggest they were excluded from Library "by reason of" a disability).

Third, as this Court previously held in allowing defendants' Motion to Dismiss plaintiff's original Complaint, defendants made a "reasonable accommodation" to plaintiff's alleged disability by inviting Mr. Bush to participate in the volleyball league while wearing a face shield instead of a face mask. (ECF Doc. No. 37, ¶ 98). "Bush cannot allege that Defendants did not provide a reasonable accommodation simply because they did not provide the accommodations he requested – an outright exemption from the mask mandate." (ECF Doc. No. 26, at 6 – 7). In his First Amended Complaint, plaintiff complains face shields were not FDA approved[13] (ECF Doc. No. 37, ¶ 48) and "are flimsy and tend[ ] to flop around on [his] face." (ECF Doc. No. 29-3, ¶ 3).[14] The point, however, is that ABRSD attempted to engage plaintiff in a dialog and plaintiff refused. See *Pletcher v. Giant Eagle, Inc.*, 2020 WL 6263916, at \*4 (W.D. Pa. Oct. 23, 2020) (wearing face shield in place of face mask held a reasonable accommodation); N. Day & J. Cowan, "Governing Through the 'New Normal': COVID-19 Lessons Learned on Local Government Law, the Constitution and Balancing Rights in Times of Crises," 50 Stetson L. Rev. 547, 564 (Summer 2021) (listing face shield as reasonable accommodation to person claiming they cannot wear a face mask).[15]

---

13 Plaintiff also alleges face masks do not prevent the spread of COVID-19. (ECF Doc. No. 37, ¶¶ 12, 23 & 67).
14 Plaintiff never tried wearing a face shield while playing volleyball. (ECF Doc. No. 29-3, ¶ 2). Notably, however, he did wear face shields on a "few occasions … in 2020 and/or 2021," presumably without violating his religious beliefs.
15 The "Implementation of DESE Mask Requirement" issued on August 25, 2021 states, in part, that students and staff who cannot wear a mask for medical reasons are exempted from the requirement. It also states: "Face shields may be an option for students with medical or behavioral needs who are unable to wear masks or face coverings." See Note 9, *supra*.

Fourth, a disabled individual is not otherwise "qualified" if he poses "a significant risk to the health or safety of others by virtue of the disability that cannot be eliminated by reasonable accommodations." *Doe v. Univ. of Md. Med. Syst. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995); *Bush v. Fantasia*, 2022 WL 4134501, at 9. See *Together Employees*, 2021 WL 5234394, at *7 (plaintiffs who pose "direct threat" to health or safety of others in workplace are not "qualified individuals"). The failure to wear a face mask in indoor public places during the COVID-19 Pandemic posed a significant risk to the health or safety of other visitors. Therefore, even if plaintiff was disabled (which defendants deny), he was not a "qualified" individual with a disability within the meaning of 42 U.S.C. § 12131(2). Count I must be dismissed.

## D. COUNT II FAILS TO STATE A SUBSTANTIVE DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983.

In *Jacobson v. Comm. of Mass.*, 197 U.S. 11 (1905), the Supreme Court rejected a Fourteenth Amendment substantive due process challenge to a state mandated smallpox vaccine. *Id.*, at 31. In so doing, it applied a deferential standard of review, concluding that the mandatory vaccination law had a "real [and] substantial relation to the protection of the public health and the public safety." *Id.* Applying the deferential *Jacobson* standard, courts have upheld government mandates requiring the wearing of masks in public places against substantive due process challenges. See *Bush v. Fantasia*, 2022 WL 4134501, at **7-8; *Fortuna v. Town of Winslow*, 2022 WL 2117717, at *15 (D. Me. June 13, 2022). "Although a government cannot use a health crisis as a pretext for trampling constitutional rights, the Supreme Court has long recognized that 'a community has the right to protect itself against an epidemic of disease which threatens the safety of its members.'" *Calvary Chapel of Bangor v. Mills*, 459 F. Supp.3d 273, 284 (D. Me. 2020) (quoting *Jacobson*, 197 U.S. at 27). This Court should uphold the ABRSD mask mandate against plaintiff's substantive due process challenge.

Even if *Jacobson* does not apply, plaintiff fails to show that the mask mandate is not rationally related to a legitimate governmental purpose. *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107 (1st Cir. 2015). See *Family Freedom*, 2021 WL 6298346, at *8 (mask mandates in public schools "bear a substantial relation to the protection of public health"). Nor does he show that the mandate sinks to a level so extreme and egregious that it shocks the conscience. *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005) See *Bush v. Fantasia*, 2022 WL 4134501, at *8 (mask mandates "certainly do not 'shock the conscience'"). Count II must be dismissed.

## E.   COUNT IV FAILS TO STATE A FREE EXERCISE CLAIM UNDER THE FIRST AMENDMENT.[16]

In an Affidavit submitted in support of his First Amended Complaint, plaintiff expresses his belief that it "violates the natural order of life" for a person or entity to attempt to obstruct or hinder the fulfillment or function of another person's "fundamental needs," including "breathing, defecating, urinating, consuming food, hydrations, and sleep." (ECF Doc. No. 29-2, ¶ 2). Based in part on this belief, plaintiff claims that the ABRSD mask mandate is "objectionable to the Plaintiff's sincerely held religious convictions." (ECF Doc. No. 37, ¶ 65).

This is not enough to state a free exercise claim under the First Amendment. To prevail on a free exercise claim, plaintiff must show the *coercive effect* of the government action "as it operates against him in the practice of his religion." *Parker v. Hurley*, 514 F.3d at 103 (quoting *School Dist. of Abington Township, PA v. Schempp*, 374 U.S. 203, 223 (1963)). As a general rule, "a law (or policy) that is neutral and of general applicability need not be justified by a compelling governmental interest even if that law incidentally burdens a particular religious practice or belief."

---

[16] Because plaintiff admitted that all civil rights claims arise out of his alleged disability, the Court treated his First Amendment claims as "waived." (ECF Doc. No. 26, at 7 n. 6). Defendants agree such claims remain waived but, out of an abundance of caution, addresses them briefly herein.

*Swanson v. Guthrie Ind. Sch. Dist. No. I-L*, 135 F.3d 694, 697-98 (10th Cir. 1998) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)). Absent a showing that a plaintiff was either forced by the state to affirm or deny a belief, or forced to engage or refrain from engaging in a practice prohibited (or mandated) by his or her religion, a free exercise claim will ordinarily not be sustained. *Mozert v. Hawkins Cty. Bd. of Ed.*, 827 F.2d 1058, 1065 (6th Cir. 1987), cert. denied, 484 U.S. 1066 (1988).

Plaintiff fails to allege that he was forced to deny a religious belief or to engage in a practice prohibited by his religion. His religion did not require him to play in the adult volleyball league. Thus, the ABRSD mask mandate – a rule of general applicability – had no coercive effect on plaintiff's religious practices. Mr. Bush was free to play or not play. As Judge Burroughs noted, the mask mandates did not single plaintiff out on the basis of his religion but instead "applied equally to all …." *Bush v. Fantasia*, 2022 WL 4134501, at *6. Just as Judge Burroughs concluded, the ABRSD mask mandate "easily" withstands both the rational basis test and the "far more deferential *Jacobson* review." *Id.*, at **6-7. Count IV must be dismissed.

**F.     COUNT V FAILS TO STATE A PEACEABLE ASSEMBLY CLAIM UNDER THE FIRST AMENDMENT.**

The right to peaceably assemble has largely been subsumed by the freedom of association. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006). Recent cases interpret the freedom of association as protecting two types of associative freedom – the right to expressive association, and the right to intimate association. Expressive association remains closely affiliated with the right to free speech. People have the right to associate together for expressive purposes, often political purposes. *NAACP v. Alabama ex rel Patterson*, 357 U.S. 449, 463 (1958). The right to intimate association recognizes the right to maintain close familial or other *private* associations free from state interference. *Roberts v. United States Jaycees*, 468 U.S.

609, 619 (1984). Typically, courts strike down any governmental restriction that "substantially burdens" the freedom to associate unless it is supported by a "compelling" state interest. *NAACP v. Button*, 371 U.S. 415, 438 (1963). And, even if there is a compelling state interest, the means employed to further that interest must not be overbroad. *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975); *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973).

Plaintiff cannot prevail on his peaceable assembly claim, as participation in the Community Education adult volleyball league is neither expressive association nor intimate association. While it may be healthy, social and fun, volleyball play is simply not "expressive." Nor is it intimate. Individuals who sign up to play in the adult volleyball league may share an interest in sport, but they are not a private organization of "shared ideals and beliefs." Nor do they associate as a way to insulate themselves from the "power of the State." Finally, even if plaintiff's "right" to participate in the adult volleyball league is protected under the First Amendment, any infringement on such right by requiring players to wear a mask is supported by the "compelling" state interest of stemming the spread of COVID-19. See *Roman Catholic Diocese of Brooklyn*, 141 S.Ct. 63, 67 (2020) (Roberts, C.J., concurring). Count V must be dismissed.

## G.   COUNT VI FAILS TO STATE AN EQUAL PROTECTION CLAIM UNDER THE FOURTEENTH AMENDMENT.

To prevail under 42 U.S.C. § 1983 for violation of his right to equal protection, plaintiff must show that defendants treated him differently from similarly situated persons and that such disparate treatment "either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). At the outset, defendants did not treat plaintiff differently – they treated him like everyone else – *i.e.*, no mask, no entry. Second, plaintiff's so-called "right" to enter an indoor public space to play volleyball without wearing a face mask is by no means a "fundamental" one.

See *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997) (fundamental right is one "deeply rooted in our history and traditions" or "fundamental to our concept of constitutionally ordered liberty.") Nor are those who wish to enter ABRSD property mask-less considered members of a "suspect class." Thus, the School Committee's mask mandate must be upheld so long as it survives rational basis review. *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *3 (N.D. Ga. May 12, 2021) (rational basis test held proper standard of review for mask mandate); *Lloyd v. School Bd. of Palm Beach County*, 2021 WL 5353879, at *11 (S.D. Fla. Oct. 29, 2021) (same). The ABRSD mask mandate survives such review.

Government action analyzed under the rational basis standard "is accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Moreover, a classification for disparate treatment (*e.g.*, mask vs. no mask) "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Faced with the COVID-19 Pandemic and armed with guidance from the CDC and others advising that the wearing of masks (particularly indoors) helps to prevent the spread of a deadly disease, the School Committee can easily provide a rational basis for the mask mandate. See *Stepien v. Murphy*, 2021 WL 5822987, at *8 (D. N.J. Dec. 7, 2021) (school mask mandate held rationally related to goal of slowing spread of COVID-19); *Gunter v. North Wasco County Sch. Dist. Bd. of Ed.*, 2021 WL 6063672, at *12 (D. Ore. Dec. 22, 2021) (statewide mask mandate in public schools held rationally related to legitimate interest in combatting spread of COVID-19). Indeed, the Supreme Court has ruled that "[s]temming the spread of COVID–19 is unquestionably a compelling interest." *Roman Catholic Diocese*, 141 S.Ct. at 67 (2020). See also *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) ("Our

Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" (quoting *Jacobson*). Count VI must be dismissed.

## H.   COUNT III FAILS TO STATE A CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985.[17]

To state a Section 1985(3) conspiracy, plaintiff must show: (1) that defendants, Superintendent Light and Erin Bettez, engaged in a conspiracy; (2) to deprive him of the equal protection of the laws; and (3) that one or more conspirators committed an act (or acts) in furtherance of the object of the conspiracy; whereby (4) plaintiff suffered injuries or was deprived of a protected right. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971); *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021). The alleged conspiracy must be pled with specificity. *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3).") Further, to be actionable, a "[S]ection 1985(3) conspiracy claim requires competent evidence that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' motivated the alleged conspirators." *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 349 (1st Cir. 1995).

As set forth above, plaintiff cannot show that he was deprived of the equal protection of the laws. Further, plaintiff alleges no racial or class-based animus on the part of defendants. Finally, absent an alleged violation of a protected right, plaintiff states no actionable conspiracy claim. See *Gattineri v. Town of Lynnfield*, 2021 WL 3634148, at *11 (D. Mass. Aug. 17, 2021) ("Where Plaintiffs have not stated a claim for violation of any constitutionally protected right, the section 1985(3) conspiracy claim fails.") Count III must be dismissed.

---

17 This claim was previously dismissed by the Court. (ECF Doc. No.26, at 8-10).

I.     **THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

As this Court ruled on defendants' prior Motion to Dismiss, Superintendent Light is entitled to qualified immunity against plaintiff's Section 1983 claims. (ECF Doc. No. 26, at 8). This Court should now reaffirm that ruling here and confirm that the other individual defendants, Dr. Bentley and Ms. Bettez, are likewise entitled to qualified immunity. As set forth above, plaintiff's allegations, even if true, do not establish viable due process or equal protection claims under the Fourteenth Amendment and/or free expression or peaceable assembly claims under the First Amendment. But even if they do, plaintiff's right (if any) to enter indoor ABRSD spaces without wearing a mask was not clearly-established at the time of defendants' alleged actions.  By adopting and enforcing a mask mandate in the face of a deadly worldwide Pandemic, no reasonable official in defendants' position of the Superintendent would have understood that they were violating plaintiff's constitutional rights. Counts ii – VI must be dismissed as against them.

## IV.  CONCLUSION

For the reasons set forth above, defendants, Acton-Boxborough Regional School District, Superintendent Peter Light, Dr. Dawn Bentley and Erin Bettez hereby request that this Honorable Court allow their Motion to Dismiss plaintiff's First Amended Complaint and thereafter order said First Amended Complaint be dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

Respectfully submitted,

The Defendants,

ACTON-BOXBOROUGH REGIONAL SCHOOL
DISTRICT, SUPERINTENDENT PETER LIGHT,
DR. DAWN BENTLEY and ERIN BETTEZ

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ John J. Davis*
_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: September 26, 2022


## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Undersigned counsel for the defendants hereby certifies, pursuant to Local Rule 7.1(a)(2), that on September 26, 2022, counsel conferred in good faith with *pro se* plaintiff, Michael Bush, by telephone, and attempted in good faith to resolve or narrow the issues regarding defendants' Motion to Dismiss Plaintiff's First Amended Complaint Under Rule 12(b)(6).

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on September 26, 2022.


*/s/ John J. Davis*
_____
John J. Davis, Esq.