UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL BUSH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:21-cv-12039-IT |
| | * | |
| ACTON-BOXBOROUGH REGIONAL | * | |
| SCHOOL DISTRICT, PETER LIGHT, | * | |
| DAWN GRIFFIN BENTLEY, and ERIN | * | |
| O'BRIEN BETTEZ, | | |
| | | |
| Defendants. | | |

MEMORANDUM & ORDER

May 23, 2023

TALWANI, D.J.

    Plaintiff Michael Bush brings this action against Defendants Acton-Boxborough

Regional School District ("School District"); its Superintendent, Peter Light; its Director of

Community Education, Erin O'Brien Bettez; and its Assistant Superintendent for Diversity,

Equity, & Inclusion, Dawn Griffin Bentley, after Bush was barred from playing in adult league

games because of his non-compliance with a mask requirement imposed by the School District

during the COVID-19 pandemic.

    In Count I, Bush alleges that the School District violated Title II of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12132. In Counts II and III, Bush seeks recovery under 42

U.S.C. § 1983 for Defendants' alleged violation of his rights and under 42 U.S.C. § 1985 for

Light's and Bettez's alleged conspiracy to deprive him of his rights. In Counts IV, V, and VI,

Bush alleges that the Defendants violated his constitutional rights, including his First

Amendment Free Exercise (Count IV), First Amendment Peaceable Assembly (Count V), and

Fourteenth Amendment Equal Protection (Count VI) rights. Now pending before the court is

Defendants' <u>Motion to Dismiss Plaintiff's First Amended Complaint</u> [Doc. No. 43] for failure to state a claim. For the reasons that follow, Defendants' <u>Motion to Dismiss Plaintiff's First Amended Complaint</u> [Doc. No. 43] is GRANTED.

## I.      Factual Background as Alleged in the Amended Complaint

After a hiatus from early 2020 to September 2021 due to COVID-19, personnel at the School District's Community Education program announced the resumption of adult volleyball classes and the mandatory usage of face masks by all participants. Am. Compl. ¶¶ 7-8 [Doc. No. 37]. Bush registered for classes to begin September 21, 2021. <u>Id.</u> at ¶ 9. On August 27, 2021, Bush sent Bettez and Bentley a notice and demand letter, objecting to the mask requirement and asking that the school rescind the requirement, in part because wearing masks was "medically inappropriate for [him]" and "objectionable to [his] sincerely held religious convictions." Notice of Claim, Ex. 7 [Doc. No. 37-10]. On August 31, 2021, Light sent a letter to Bush acknowledging receipt of his letter, informing him that the mask requirement would remain in place, and offering to refund Bush's registration fees if he was uncomfortable with the requirement. Light Letter, Ex. 9 [Doc. No. 37-12]. On September 15, 2021, Bush's counsel sent a letter to Light reasserting Bush's objections to the mask mandate on medical and religious grounds and requesting a meet and confer take place prior to commencing litigation. September 15, 2021 Letter, Ex. 10 [Doc. No. 37-13]. On September 20, 2021, Light emailed Bush requesting documentation regarding his condition and its impact on his ability to wear a mask, Am. Compl. ¶ 86; Light Email, Ex. 11 [Doc Nos. 37, 37-14], and through counsel offered Bush the option of using a face shield instead of a face mask. Am. Compl. ¶ 98, Attorney Emails, Ex. 12 [Doc. No. 37, 37-15]. On September 21, 2021, Bettez, on Light's instructions, barred Bush

from entering the school building and participating in the adult volleyball class. Am. Compl. at ¶¶ 104, 113, 117 [Doc. No. 37].

## II.     Procedural Background

On December 14, 2021, Bush filed his original complaint, which alleged that the School District had violated the ADA and that the School District and Light had violated 42 U.S.C. §§ 1983 and 1985. Compl. [Doc. No. 1]. The court granted Defendants' Motion to Dismiss [Doc. No. 13] but allowed Bush a brief period to file a motion for leave to amend the complaint. Mem. & Order 11 & n.9 [Doc. No. 26]. Bush, now proceeding *pro se*, sought leave to file an amended complaint, see Motion for Leave to File [Doc. No. 28], which the court allowed as unopposed, Elec. Order [Doc. No. 36]. Bush filed his 1st Amended Complaint [Doc. No. 37], which Defendants seek to dismiss. Mot. to Dismiss Am. Compl. [Doc. No. 43].

## III.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotations omitted).

## IV.  Discussion[1]

### A.  *Claim Under the Americans with Disabilities Act (Count I)*

"Congress enacted Title II of the ADA to combat discrimination by governmental entities in the operation of public services, programs, and activities." Toledo v. Sanchez, 454 F.3d 24, 30 (1st Cir. 2006). "It provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" Id. at 30-31 (quoting 42 U.S.C. § 12132). "The statute authorizes private suits against public entities to enforce its provisions." Id. (citing 42 U.S.C. § 12133).

To state a claim under Title II of the ADA, a plaintiff must allege facts showing "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural,

---

[1] As an initial matter, Bush argues that because Bentley and Bettez's attorney did not file a Notice of Appearance on their behalf, the Motion to Dismiss the Amended Complaint [Doc. No. 43] is somehow untimely as to these Defendants. But no separate Notice of Appearance was required, as Local Rule 83.5.2(a) provides that "[t]he filing of . . . any other pleading signed on behalf of a party constitutes an entry of appearance for that party." Mass. L.R. 83.5.2(a).

communication, or transportation barriers, or the provision of auxiliary aids and services, meets

the essential eligibility requirements for the receipt of services or the participation in programs or

activities provided by a public entity." 42 U.S.C. § 12131(2). In turn, the term "public entity"

includes "any State or local government" as well as "any department, agency, special purpose

district, or other instrumentality of a State or States or local government." Id. § 12131(1).

      1.      Disability Within the Meaning of the ADA

"Not all physical impairments rise to the level of disability under the ADA." Lebron–

Torres v. Whitehall Laboratories, 251 F.3d 236, 239 (1st Cir. 2001) (citing Albertson's, Inc. v.

Kirkingburg, 527 U.S. 555, 565-66 (1999)). A disability for purposes of the ADA is "(A) a

physical or mental impairment that substantially limits one or more major life activities of such

individual; (B) a record of such impairment; or (C) being regarded as having such an

impairment. . ." 42 U.S.C. § 12102(1)(A); see also 28 C.F.R. § 35.108. In general, major life

activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

In his original Complaint, Bush alleged that he alerted the School District that the face

mask policies would preclude his participation in the volleyball league due to his medical

disability, Compl. ¶ 16 [Doc. No. 1], and included a doctor's note asserting that his doctor

"found him to have contraindications to mask wearing for a private medical condition." Doctor's

Note, Ex. 7 [Doc. No. 1-9]. This court dismissed Bush's ADA claims because he failed to allege

a disability that "substantially limit[ed] one or more major life activities." Mem. & Order 6 [Doc.

No. 26].

The new facts Bush alleges in his <u>Amended Complaint</u> do not cure this deficiency. Reading Bush's claim generously, he alleges that his disability is "bacterial infections" caused by wearing a mask. Aff. 1, Ex. 1 ¶ 2 [Doc. No. 37-1]. These infections interfere with his ability to perform major life activities, "including but not limited to breathing, walking, bending, lifting, carrying, shopping, performing manual tasks, doing errands, speaking, communicating, obtaining food, and interacting with others." Aff. 1, Ex. 1 [Doc. No. 37-1]. Still, these allegations do not establish that Bush has a disability within the meaning of the ADA. Infections caused by mask-wearing are not themselves an underlying "physiological order or condition." <u>See</u> 29 C.F.R. § 1630.2(h) (defining "physical or mental impairment"). The EEOC's interpretive guidance on the ADA makes clear that short-lived afflictions like Plaintiff's are not disabilities for purposes of the ADA: "[T]emporary, non-chronic impairments with little or no long term impact are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. Pt. 1630.2(j); <u>see also</u> <u>Cormier v. Littlefield</u>, 112 F. Supp. 196, 199 (D. Mass. 2000) (declining to find that "temporary" knee injury was a disability under the ADA). Plaintiff has still failed to allege facts showing a disability protected by the ADA.

Bush also alleges that he has a qualifying disability under 42 U.S.C. §§ 12102(1)(B) and 12102(1)(C). Opp'n 12 [Doc. No. 46]. But without allegations that he has a record of an impairment that substantially limits one or more major life activities, Bush lacks a qualifying disability under § 12102(1)(B). See 29 C.F.R. § 1630.2(k)(1) (defining § 12102(1)(B) as "the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities"). Bush also has not alleged facts showing that he is regarded as having a disability under § 12102(1)(C).

As Bush has failed to allege facts to conclude he has a disability, a record of a disability, or is regarded as having a disability that substantially limits one or more major life activities, he has failed to allege facts showing that he is protected under the ADA and dismissal is proper as to Count I.[2]

2.      Reasonable Accommodation Under the ADA

Even if Bush had sufficiently alleged a disability or a record of a disability under the ADA, his claim would still fail because he has not sufficiently alleged that Defendants failed to provide a reasonable accommodation.

Federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).[3]

"[A] request for a reasonable accommodation may trigger a responsibility on the part of the [defendant] to enter into an interactive process with the [plaintiff] to determine an appropriate accommodation." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 23 (1st Cir. 2004) (citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 262 n.11 (1st Cir. 2001).[4] "This process should

_____

[2] Because he has failed to establish the first prong of a claim under Title II of the ADA, the court does not reach the second and third prongs to determine whether Bush has sufficiently alleged he was excluded from participation in the volleyball league and that such exclusion was because of his disability.

[3] However, "[a] covered entity . . . is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong." 29 C.F.R. § 1630.2(o)(4).

[4] "Generally, the cases construing 'reasonable accommodations' are persuasive authority with respect to cases involving 'reasonable modifications.'" Kiman v. New Hampshire Dept. of

identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "However, where 'the [plaintiff] fails to satisfy [their] burden of showing a reasonable accommodation existed, the [plaintiff] cannot maintain a claim for failure to engage in an interactive process." Eustace v. Springfield Pub. Sch., 463 F. Supp. 3d 87, 107 (D. Mass. 2020) (quoting Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119, 133 (1st Cir. 2017)).

The court's previous Memorandum and Order dismissed Bush's ADA claims as conclusory because Defendants offer to Bush of the option of wearing a face shield instead of a face mask contradicted Bush's claims that Defendants did not "engage in serious or meaningful communication about reasonable accommodation." Mem. & Order 6 [Doc. No. 26]. The court noted that "Bush cannot allege that Defendants did not provide a reasonable accommodation simply because they did not provide the accommodations he requested—an outright exemption from the mask mandate." Id. at 6-7.

Bush's Affidavit attached to his Amended Complaint details a litany of issues with wearing face shields, including obstructed vision, difficulty being heard, and difficulty reading and seeing objects. Aff 3, Ex 3 ¶¶ 3-8 [Doc. No. 30-1]. Bush argues that face shields were not a reasonable modification because they restricted his ability to "safely and fully effectively play volleyball." Id. ¶ 15. A reasonable accommodation under the ADA, however, "need not be 'perfect' or the one 'most strongly preferred' by the []plaintiff." Wright v. New York State Department of Corrections, 831 F.3d 64, 72 (2nd Cir. 2016). Where Bush complains that a face mask would lead to infections, no reasonable jury would find that a face shield was not a

---

Corrections, 451 F.3d 274, 283 n.9 (1st Cir. 2006) (applying requirements of "reasonable accommodation" in Title I claims to Title II claim).

reasonable accommodation. Accordingly, dismissal is also proper as to Count I because Bush has

failed to allege that Defendants did not offer a reasonable accommodation.[5]

      B.    *Claims Under the Fourteenth Amendment's Equal Protection Clause (Count VI)*

      Bush alleges that Defendants have violated the equal protection clause of the Fourteenth

Amendment. Am. Compl. ¶ 199 [Doc. No. 37]. To survive a motion to dismiss on an equal

protection claim, Plaintiff must allege facts identifying "specific instances where persons situated

similarly in all relevant aspects were treated differently," Cordi-Allen v. Conlon, 494 F.3d 245,

251 (1st Cir. 2007), and that that disparate treatment either "burdens a fundamental right [or]

targets a suspect class." Romer v. Evans, 517 U.S. 620, 631 (1996). "Absent a suspect

classification or undue burden on fundamental constitutional rights, a classification made by

government actors is vulnerable under the Equal Protection Clause only if no rational

justification can be imagined for its use." Jeneski v. City of Worcester, 476 F.3d 14, 16 (1st Cir.

2007).

      Under rational basis review, government action "is accorded a strong presumption of

validity." Heller v. Doe by Doe, 509 U.S. 312, 319 (1993). "A challenger can overcome this

presumption only by 'demonstrating that there exists no fairly conceivable set of facts that could

ground a rational relationship between the challenged classification and the government's

---

[5] In his Opposition, Bush contends that the School District has also violated Title III of the ADA.
Opp'n 12 [Doc. No. 46]. "Title III of the ADA targets discrimination by privately operated
places of public accommodation." Dudley v. Hannaford Bros. Co., 333 F.3d 299, 303 (1st Cir.
2003). To state a claim under Title III of the ADA, a plaintiff must first allege that they "come
within the protections of the ADA as a person with a disability" and "that the defendant's
establishment is subject to the mandates of Title III as a place of public accommodation." Id. at
307 (explaining further requirements of discriminatory policy and refusal to reasonably
accommodate). Because Bush has failed to allege a disability within the meaning of the ADA,
dismissal is also proper for a claim under Title III.

legitimate goals.'" <u>Wine and Spirits Retailers, Inc. v. Rhode Island</u>, 418 F.3d 36, 53-54 (quoting

<u>Eulitt ex rel. Eulitt v. Maine, Dept. of Educ.</u>, 386 F.3d 344 (1st Cir. 2004) (abrogated on other

grounds)).

 Here, Bush has not alleged facts to establish that the School District's policy burdened a

fundamental right or liberty interest. <u>See generally</u> <u>Cook v. Gates</u>, 528 F.3d 42, 49 (1st Cir.

2008) (listing what the Supreme Court has classified as liberty interests in Fourteenth

Amendment cases). Nor has he demonstrated that the mask policy targeted him as a member of a

suspect class because it did not target him at all: the policy applied generally to all participants in

the School District's programs.

 As such, the policy is subject only to rational basis review, a bar it easily clears. Courts

have recognized that mask requirements are "rationally related to the interest in stemming the

spread of COVID-19 because . . . it has been proven that the wearing of masks can slow the

transmission of the coronavirus." <u>Delaney v. Baker</u>, 511 F. Supp. 3d 55, 74 (D. Mass. 2021). The

Defendants relied on Governor Baker's order, CDC guidance, and other guidance from the

Massachusetts government that suggested that face coverings would help them prevent the

spread of COVID-19. <u>Id.</u> at ¶¶ 19-20, 27, 29 [Doc. No. 37]. Although Bush contends that "[f]ace

masks do not significantly reduce the spread of COVID-19," <u>id.</u> at ¶ 13, he does not dispute that

there are facts to ground a rational relationship between the Defendants' mask requirement and

their legitimate goal of preventing the spread of COVID-19.

 Because Bush has not demonstrated that the School District's policy burdened a

fundamental right or targeted a suspect class or that the policy was implemented with no rational

basis, he has failed to state a claim under the Fourteenth Amendment's Equal Protection Clause

and Count VI is dismissed.

C.    *Claims Under the First Amendment (Counts IV, V)*

Bush alleges that Defendants have violated his First Amendment free exercise (Count IV) and freedom of assembly (Count V) rights. For the following reasons, both counts are dismissed.

1.   Free Exercise

In an affidavit, Bush asserts that mask-wearing "hinder[s] the fulfilment or function" of "fundamental needs" in a way that "violates the natural order of life." Aff 2, Ex. 2 [Doc. No. 37-2].  He alleges that he notified Defendants that wearing a mask violated his sincerely held religious beliefs and Defendants failed to address his concerns or accommodate his religious convictions or practices. See Am. Compl. ¶¶ 193-96 [Doc. No. 37].

To state a claim for violation of the right to free exercise of religion, a plaintiff must allege that a defendant personally and unjustifiably placed a substantial burden on his religious practices. See Hernandez v. Comm'r, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden"). "When a religiously neutral and generally applicable law incidentally burdens free exercise rights, [courts] will sustain the law against constitutional challenge if it is rationally related to a governmental interest." Does 1-6 v. Mills, 16 F.4th 20, 29 (1st Cir. 2021). A law is considered neutral if it does not single out a religion or religious practice. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532-34 (1993).

The School District's mask policy is religiously neutral and generally applicable, so it is subject to rational basis review, which it satisfies. See supra section B. Because Plaintiff has failed to demonstrate that Defendants' mask policy impermissibly burdened his free exercise of religion, Count IV of his Amended Complaint is dismissed.

11

2.   Freedom of Assembly

Bush further alleges that the School District's mask policy interfered with his First Amendment right to freedom of peaceful assembly by "barr[ing] the plaintiff from assembling with other people with whom he was entitled to assemble," namely, the other members of the adult volleyball league. Pl. Opp. ¶ 7 [Doc. No. 46]. The right to freedom of assembly "has been largely subsumed into a broad right of expressive association." Gattineri v. Town of Lynnfield, No. 20-cv-11404, 2021 WL 4134501 (D. Mass. Aug. 17, 2021). "[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984)). "To violate the constitution, government action that interferes with such associational rights must 'affect in [a] significant way the existing members' ability to carry out their various purposes.'" Gattineri, 2021 WL 3634148, at *9 (quoting Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 548 (1987)).

Bush has not demonstrated that the School District's policy interfered with his right to engage in activities protected by the First Amendment. Participation in the volleyball league is not expressive or intimate association of the kind traditionally protected by the right to assembly and association. See Stanglin, 490 U.S. at 23-26 (rejecting a "generalized right of social association" and holding that attendance at a community dance hall could be limited by age without infringing on the First Amendment). As such, the policy is subject to rational basis review, which it survives, see supra section B. Because Bush has failed to allege facts that show Defendants violated his First Amendment right of assembly, Count V is dismissed.

D.    *Claims Under 42 U.S.C. §§ 1983 & 1985 (Counts II, III)*

Bush alleges that Defendants violated 42 U.S.C. § 1983 by depriving him of Constitutional or statutory rights and that Light and Bettez violated 42 U.S.C. § 1985 by conspiring to deprive him of those rights. Am. Compl. ¶¶ 184-89 [Doc. No. 37]; see also Pl. Opp. 24-25 [Doc. No. 46] (clarifying that § 1983 claim arises from alleged ADA violation). Defendants contend that Light, Bettez, and Bentley are entitled to qualified immunity, that Bush failed to state a claim that Defendants violated his rights, and that Bush has not stated an actionable conspiracy claim under § 1985. Def.'s Mem. 14, 19, 20 [Doc. No. 44].

1.    Qualified Immunity as to Defendants Light, Bettez, and Bentley

"When sued in their individual capacities, government officials are immune from damages claims unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" Eves v. LePage, 927 F.3d 575, 582-83 (1st Cir. 2019) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (internal quotations omitted)). "If either of the two prongs is not met—i.e., if the facts do not show a constitutional violation or the right in question was not clearly established—the officer is immune. Either prong may be addressed first, depending on 'the circumstances in the particular case at hand.'" Marrero-Méndez v. Calixto-Rodríguez, 830 F.3d 38, 43 (1st Cir. 2016) (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Bush alleges that Light, Bettez, and Bentley were each aware of his Notice & Demand letter explaining their mask requirement violated his civil rights. Am. Compl. ¶¶ 61, 64-66, 69, 84-87, 110-13, 127, 136-41, 143-44, 169-71, 191-93 [Doc. No. 37]. He contends that his rights were clearly established and that Defendants "had time to consider those rights before taking multiple actions that violated those rights." Pl. Opp. 25 [Doc. No. 46]. However, as set forth

above, Bush's <u>Amended Complaint</u> does not sufficiently allege that his rights under either the

ADA or the Constitution were violated, <u>see</u> <u>supra</u> sections B, C. Accordingly, taking all of

Bush's allegations in the complaint as true, Light, Bettez, and Bentley are each entitled to

qualified immunity for claims against them in their official capacity in Counts II and III.

> 2.      Allegation of ADA Violation as the Basis for Counts II and III

In the previous <u>Memorandum and Order</u>, this court dismissed Bush's § 1983 and § 1985

claims because "neither § 1983 nor § 1985 provides a remedy for ADA violations." Mem. &

Order 8 [Doc. No. 26] (quoting <u>D.B. ex rel. Elizabeth B. v. Esposito</u>, 675 F.3d 26, 44 (1st Cir.

2012) ("[W]e have already explained that § 1983 does not provide a remedy for . . . ADA

violations. We see no reason why § 1985 should be any different (internal citations omitted))).

Bush contends that § 1983's text and Supreme Court interpretations of § 1983 do not exclude the

ADA. Opp'n 24 [Doc. No. 46].

"Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide

their own frameworks for damages." <u>M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico</u>, 528 F.3d

9, n.3 (1st Cir. 2008); <u>see also</u> <u>Fitzgerald v. Barnstable School Committee</u>, 555 U.S. 246, 252-53

(2009) (explaining that despite § 1983's text, § 1983 claims cannot be based on violations of a

statutory right where the statute evidences Congress's intent to create an exclusive remedial

scheme). Congress created a remedy for violations of Title II of the ADA. 42 U.S.C. § 12133

("The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies,

procedures, and rights this subchapter provides to any person alleging discrimination on the basis

of disability . . . ." (citing 29 U.S.C. § 794a (Civil Rights Act Title V))). Because the ADA

provides its own remedy, Bush cannot base his § 1983 claims on an alleged ADA violation.

To the extent that Bush's § 1985 claim rests on Bettez's and Light's alleged conspiracy to violate the ADA, Count III also fails. See Mem. & Order 8 [Doc. No. 26].

> 3.   Allegation of Conspiracy Under 42 U.S.C. §§ 1983 & 1985 as the Basis for Count III

Both § 1983 and § 1985 "provide remedies for violations of rights created by other sources of law, with § 1983 supplying a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law, see 42 U.S.C. § 1983, and § 1985, among other things, supplying the same against two or more persons who conspire to deprive another 'of equal protection of the laws, or of equal privileges and immunities under the law.'" D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012) (quoting 42 U.S.C. § 1985(3)).

"To plead an actionable claim under [§ 1985(3)], [the plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)); see also Gattineri v. Town of Lynnfield, 2021 WL 3634148, at *11 (D. Mass. Aug. 17, 2021) ("Where Plaintiffs have not stated a claim for violation of any constitutionally protected right, the section 1985(3) conspiracy claim fails."). "To plead such a conspiracy, a plaintiff 'must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights.'" Id. at 577-78 (quoting Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019) (alterations in original). "When direct evidence of such an agreement is unavailable, 'the plaintiff must plead plausible factual allegations sufficient to

support a reasonable inference that such an agreement was made.'" <u>Id.</u> at 578 (quoting <u>Parker</u>, 935 F.3d at 18). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." <u>Id.</u> (citing <u>Parker</u>, 935 F.3d at 18). A "section 1985(3) conspiracy claim requires competent evidence that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' motivated the alleged conspirators.'" <u>Alexis v. McDonald's Restaurants of Mass., Inc.</u>, 67 F.3d 341, 349 (1st Cir. 1995) (quoting <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268 (1993)).

Bush alleges that Light and Bettez conspired to deprive him of his constitutional or statutory rights in violation of § 1985. Am. Compl. ¶ 188 [Doc. No. 37]. Bush states that Bettez barred him from entering the school building without a face mask based on instructions from Light. <u>Id.</u> at ¶ 113-15. Bush further alleges that the Defendants did not subject others to equivalent discrimination or treatment, since on September 28 and September 29, no one waited outside the building, and multiple people entered and exited without face coverings. <u>Id.</u> at ¶ 124-26. As explained above, Bush's allegations do not allege a deprivation of Bush's constitutional or federal rights. Accordingly, Count III is dismissed to the extent it claims a conspiracy in violation of §§ 1983 and 1985.

### V.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint is GRANTED.

IT IS SO ORDERED

May 23, 2023                                    /s/ Indira Talwani
                                               United States District Judge

16